ERSKINE HEWITT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57032, 63141.   Promulgated June 19, 1934.

*Francis J. Sweeney, Esq.*, for the petitioner.

*W. F. Wattles, Esq.*, and *Bernard D. Daniels, Esq.*, for the respondent.

### OPINION.

BLACK: These proceedings, duly consolidated, are for the redetermination of deficiencies in income taxes for the years 1928 and 1929 in the amounts of $7,335.87 and $5,877.97, respectively. The amounts in controversy are $6,125 for 1928 and $5,000 for 1929.

The question involved is whether the respondent erred in including in petitioner's income $24,500 in 1928 and $25,000 in 1929 as interest received by petitioner in those years on certain bonds purchased by petitioner at various times between 1921 and 1928, when, at the time of purchase, the obligor of the bonds had been in default as to interest payments since July 2, 1913. The facts set forth are summarized from a stipulation of facts submitted by the parties.

Petitioner is an individual, residing at Ringwood Manor, Passaic County, New Jersey.

On January 3, 1921, and certain intervening dates up to and including May 10, 1928, petitioner purchased $980,000 face amount of first mortgage gold 5 percent (formerly 6's) bonds of the Guayaquil Quito Railway Co., a New Jersey corporation which owns and operates a railroad in Ecuador, dated January 2, 1899, and maturing January 2, 1932, together with $546,925 defaulted matured interest coupons on said bonds from July 2, 1913, to the several dates of purchase, paying therefor the sum of $261,086.23. On October 23, 1928, petitioner purchased $10,000 face amount of the same issue of bonds, together with $7,500 defaulted matured interest coupons on said bonds from January 2, 1914, paying therefor the sum of $6,486.43.

On December 26, 1928, petitioner again purchased $10,000 face amount of the same issue of bonds, together with $7,500 defaulted matured interest coupons on said bonds from January 2, 1914, paying therefor the sum of $6,537.50. A schedule showing in detail the several dates of the above-mentioned purchases and the par amount of bonds and defaulted matured interest coupons purchased, together with the amounts paid therefor, is included in the stipulation. It is believed unnecessary to set it out here in detail.

The Guayaquil & Quito Railway Co. has been in default as to the sinking fund provisions on its bonds and the default as to sinking fund payments continued from July 1909 to the year 1928, when a one-half year's sinking fund payment was made.

The Guayaquil & Quito Railway Co. has been in default as to interest on its bonds and the default upon the interest payments continued from July 2, 1913, to July 2, 1928, when the July 2, 1913, coupon was paid, and on January 2, 1929, the Guayaquil & Quito Railway Co. paid the interest coupon due January 2, 1914.

The default of the Guayaquil & Quito Railway Co. as to interest payments on said bonds, the principal of which was due January 2, 1932, has continued with respect to matured interest coupons dated July 2, 1914, and all subsequent coupons to date of maturity, January 2, 1932. On January 2, 1932, the Guayaquil & Quito Railway Co. defaulted and failed to pay the principal and interest then and theretofore due and has continued the defaults with respect to both interest and principal.

On July 2, 1928, petitioner received the sum of $24,500 in payment of the defaulted matured interest coupons due July 2, 1913, on the aforesaid bonds and matured interest coupons which the petitioner had theretofore purchased and then owned.

On January 2, 1929, petitioner received the sum of $25,000 in payment of the defaulted matured interest coupons due January 2, 1914, on the aforesaid bonds and matured interest coupons which the petitioner had theretofore purchased and then owned.

In determining the deficiencies proposed in the deficiency notices, the respondent treated the entire amount of the aforesaid proceeds received on July 2, 1928, with respect to the July 2, 1913, coupon in the amount of $24,500 and on January 2, 1929, with respect to the January 2, 1914, coupon in the amount of $25,000, as taxable income to petitioner.

The bonds and defaulted matured interest coupons purchased by the petitioner have not been sold or otherwise disposed of, except, as heretofore stated, that on July 2, 1928, the July 2, 1913, coupons in the amount of $24,500 and on January 2, 1929, the January 2, 1914, coupons in the amount of $25,000, were paid.

The Guayaquil & Quito Railway Co. first mortgage 5 percent gold bonds (formerly 6's) are listed, and at all times mentioned in these proceedings have been traded on the London Stock Exchange at a price range from 1923 to 1931, inclusive, as follows:

|  | 1931 | 1930 | 1929 | 1928 | 1927 | 1926 | 1925 | 1924 | 1923 |
|---|---|---|---|---|---|---|---|---|---|
| High | 35 | 45 | 68½ | 71 | 37½ | 32 | 35 | 37 | 32 |
| Low | 21 | 24½ | 34½ | 34 | 27 | 24 | 25 | 20 | 18¾ |

The quotations represent the price of both the bonds and matured interest coupons purchased. There were no sales of the Guayaquil & Quito Railway Co. first mortgage 5 percent gold bonds (formerly 6's) on July 2, 1928. During the month of June 1928 there was a sale at 55. The nearest sale to January 2, 1929, of the Guayaquil & Quito Railway Co. first mortgage 5 percent gold bonds (formerly 6's) was on December 26, 1928, at 65⅜.

In the statement attached to the deficiency notice in Docket No. 57032, the respondent advised petitioner as follows:

Relative to interest of $24,500.00 received on bonds of the Guayaquil and Quito Railway Company which was included in net income by the revenue agent, you are informed that inasmuch as you report on a cash receipt and disbursement basis the entire amount of interest received from this source is held to be taxable income for 1928. Furthermore, it has not been shown what part of the original cost of the bonds was for unpaid coupons. The findings of the examining officer are, therefore, sustained.

Petitioner contends that the amounts received should be treated as a return of capital, and that he should not be considered as having realized any income from the collection of certain of the defaulted matured interest coupons attached until his entire investment of $274,110.16 has been returned to him. In support of this contention petitioner cites *Doyle* v. *Mitchell Bros. Co.*, 247 U.S. 179; *Eisner* v. *Macomber*, 252 U.S. 189; *La Belle Iron Works* v. *United States*, 256 U.S. 377; *Burnet* v. *Logan*, 283 U.S. 404; *Collin* v. *Commissioner*, 32 Fed. (2d) 753; *Commissioner* v. *Garber*, 50 Fed. (2d) 588; *Kirkland* v. *Burnet*, 57 Fed. (2d) 608.

The respondent contends that what petitioner received was "interest"; that under sections 22 (a) and 42 of the Revenue Act of 1928 and article 333, Regulations 74, the amounts received should be considered as income in the year in which received; and that "At best, the most petitioner could hope to have treated as a return of capital upon the payment of interest coupons, would be the cost of those coupons. But no showing as to such cost has been made. Consequently, he can not prevail in this action."

We do not agree with the contention of respondent that the amounts of $24,500 and $25,000 received in 1928 and 1929, respectively, are taxable. These amounts, under the facts stipulated in these proceedings, did not, in petitioner's hands, represent "interest" as that term is used in section 22 (a) of the Revenue Act of 1928, and defined in *Greenville Textile Supply Co.*, 1 B.T.A. 152, and *Joseph W. Bettendorf*, 3 B.T.A. 378. Petitioner purchased both the bonds and the coupons after the latter had matured and were in default. Such coupons, in petitioner's hands, were capital assets. Cf. *L. A. Thompson Scenic Ry. Co.*, 9 B.T.A. 1203, last paragraph. To the same effect is Sol. Op. 46, C.B. No. 3, p. 90. Cf. *John Hancock Mutual Life Ins. Co.*, 10 B.T.A. 736.

The accumulated defaulted interest was just as much an obligation of the obligor corporation as the principal of the bonds. They did not represent different classes of property where it is contemplated that an apportionment of costs be made, if practicable, in accordance with the respective fair market values of each at the time of purchase. Cf. *Glenn H. Curtiss*, 21 B.T.A. 629; affd., 57 Fed. (2d) 847.

This holding we think is borne out by the fact that the price quotations shown in our findings of fact in this opinion are in single figures and represent the price of both the bonds and matured interest coupons attached. In other words, when the bonds, with the defaulted interest coupons attached, were sold on the London Stock Exchange they were sold as one single piece of property and no attempt was made to quote the bonds at one figure and the defaulted interest coupons at another figure. Under these stipulated facts there is no basis for apportioning the cost between the face value of the bonds and accumulated interest evidenced by defaulted coupons attached to the bonds. We think, therefore, that petitioner is entitled to recover his capital cost before there would be a realization of income. It is plain that the amounts received from the collection of the interest coupons in question were much less than a return of petitioner's capital investment. The situation we have before us in the instant case should not be confused with that where the owner of bonds purchases them before there is any default in interest. In such a case there is of course no purchase of defaulted interest and in subsequent years if there is a default in interest, which is subsequently paid, it is income to the owner of the bonds in the year in which it is paid. Cf. *Landon* v. *Commissioner*, 59 Fed. (2d) 989, last paragraph of the court's opinion.

Article 333 of Regulations 74, Revenue Act of 1928, deals with that sort of a situation wherein it says: "Defaulted coupons are income for the year in which paid." Respondent has cited this regula-

tion in his brief in support of his contention that the defaulted interest collected by petitioner in the instant case is income. However, it seems clear that the cited regulation has no application to a situation where a taxpayer purchases bonds with interest coupons attached, already defaulted. In such a situation the purchase of the defaulted interest coupons is, as we have already endeavored to point out, as much a capital transaction as the purchase of the principal obligation of the bonds.

We hold, therefore, that petitioner, in collecting the 1913 and 1914 interest coupons, owing to the position of purchaser thereof which he occupied, was not collecting interest within the meaning of that term as used in the statute, but was recovering a part of his capital investment. The amounts received being less than the taxpayer's capital investment, there was no taxable income. Cf. *Drier* v. *Commissioner*, 72 Fed. (2d) 76.

Petitioner does not contest some other minor adjustments made by the Commissioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*