ADRIAN & JAMES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 685.   Promulgated February 2, 1945.

*Elden McFarland, Esq.*, for the petitioner.
*Jonas M. Smith, Esq.*, for the respondent.

OPINION.

Tyson, *Judge*: The first issue is whether the payments, or any portion thereof, received by the petitioner with respect to the Transit Co. 7 percent gold notes and attached coupons while the Transit Co. was in receivership, which payments were made out of interest collected on the bonds pledged as collateral thereto, constituted a return of capital rather than interest for the purpose of ascertaining the cost basis of such notes and coupons in connection with their sale in 1939. Respondent contends that the notes and coupons when acquired were acquired as one single piece of property and that all subsequent payments received thereon, including "post-due interest," were a return of capital, so that petitioner's cost basis for the purpose of determining its gain on the subsequent sale of such notes and coupons must be correspondingly reduced by the full amount of such payments, citing *Pierce Corporation* v. *Commissioner*, 120 Fed. (2d) 206; *Erskine Hewitt*, 30 B. T. A. 962, 965; *William H. Noll*, 43 B. T. A. 496, 502; and *R. O. Holton & Co.*, 44 B. T. A. 202, 205. It is clear that the payments received on the principal of the notes, whether those notes were acquired prior or subsequent to default, constitute a return of capital. Cf. *William H. Noll, supra*, and *R. O. Holton & Co., supra*, and authorities cited therein. It is equally clear that under the authority of *Pierce Corporation, supra*, *Erskine Hewitt, supra*, *William H. Noll, supra*, and *R. O. Holton & Co., supra*, the payments received after default on the principal of the coupons acquired subsequent to default and attached to the $38,000 of notes also constitute a return of capital. However, the payments received after default on the principal of the coupons attached to the $10,000 face value notes purchased long prior to default of the coupons constitute, in our opinion, interest rather than a return of capital, because no portion of the principal amount of such interest coupons had been earned or accrued prior to their acquisition by petitioner, that acquisition having been in 1925 and no part of the principal or the interest coupons having been earned or accrued prior to 1932. As to the final coupons attached to these $10,000 notes it may be said, as in *Erskine Hewitt, supra*, that "In such a case there is of course no purchase of defaulted interest and in subsequent years if there is a default in interest which is subsequently paid it is income to the owner of the bonds (notes here) in the year in which it is paid." Cf. *Landon* v. *Commissioner*, 59 Fed. (2d) 989.

This brings us to consideration of another question presented by the first issue, i. e., whether payments received by petitioner from the trustee and designated by the court and trustee as "post-due interest" on the principal of the notes and on the principal of the coupons, including those purchased prior to and subsequent to default, constitute

interest or a return of capital. This question was not considered or decided in any of the cases cited by respondent. We are of the opinion that such payments of "post-due interest" on the notes and coupons, whether acquired prior or subsequent to default, constitute interest and not a return of capital to the extent that it was earned or accrued after the notes and coupons were acquired. Since the $10,000 notes and coupons were acquired in 1925, long before the "post-due interest" on the notes and coupons began to accrue on September 1, 1932, manifestly, none of the "post-due interest" paid and received on such notes and coupons had been earned or accrued at their acquisition, and consequently the entire amount so paid and received is interest and not a return of capital.

As to the $38,000 notes and coupons acquired after default, the record shows they were acquired at various dates after September 1, 1932, when the "post-due interest" began to accrue. It is apparent from the schedule of payments of "post-due interest" on the notes and coupons and the dates of acquisition of such notes and coupons that when these notes and coupons were acquired after default some portion of the interest designated as "post-due interest" had been earned or accrued and when this portion was subsequently paid to petitioner it constituted a return of capital. That portion was not income from petitioner's investment because it was earned or being accrued prior to such investment and constituted a part of that investment. See *Helvering* v. *Missouri State Life Ins. Co.*, 78 Fed. (2d) 778; *L. A. Thompson Scenic Railway Co.*, 9 B. T. A. 1203; *Great Southern Life Insurance Co.*, 33 B. T. A. 512; affd., 89 Fed. (2d) 54; certiorari denied, 302 U. S. 698; and *Great Southern Life Insurance Co.*, 36 B. T. A. 828. The portion of interest included in the designation of "post-due interest" which had been earned or accrued on the $38,000 notes and attached coupons at the date of their acquisition is subject to mathematical determination from the schedule showing the dates and amounts of such interest payments and the tabulation in our findings showing the dates on which the notes and coupons were acquired.

The second issue involves the determination of the amount of petitioner's dividend carry-over from 1937 to 1939. The original income tax liability of the Acee Corporation for the year 1936 was $3,911.13, which amount the petitioner paid in March 1937. Prior thereto, on December 31, 1936, the Acee Corporation and petitioner had executed, acknowledged, filed, and recorded with the Secretary of State of Delaware an agreement of merger whereby:

* * * in accordance with Section 59 of the General Corporation Law of the State of Delaware, * * * said ADRIAN & JAMES, INC. and said ACEE CORPORATION shall be, and they are hereby, merged into ADRIAN & JAMES, INC. and shall hereafter be a single Corporation which shall be ADRIAN & JAMES, INC. which is and shall be the surviving corporation * * *

The agreement provided that all debts, liabilities, and duties of the Acee Corporation attached to the petitioner as the surviving merged corporation and were enforceable against it, as such, to the same extent as if incurred or contracted by it. This latter and the other provisions of the agreement of merger were in conformity with the General Corporation Law of the State of Delaware. Those laws, found in the Revised Code of Delaware 1935, ch. 65, art. 1, after providing in section 59 for an agreement of merger, such as that here, further provided, in section 60 thereof, as follows:

When an agreement shall have been signed, acknowledged, filed and recorded, as in the preceding Section is required, for all purposes of the laws of this State the separate existence of all the constituent corporations, parties to said agreement, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into one of such corporations, as the case may be, in accordance with the provisions of said agreement, * * * and being subject to all the * * * duties of each of such corporations so consolidated or merged, * * * provided, however, that all rights of creditors and all liens upon any property of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said resulting or surviving corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

Petitioner, having paid the original income tax liability of the Acee Corporation after the merger, now contends that the amount of such payment should have been deducted from its net income in computing its 1937 Title 1A net income, as a personal holding company, for the purpose of determining its dividend carry-over from 1937 to 1939. It relies specifically on the language of section 406 of the Revenue Act of 1938 (now, in substance, section 505 (a) (1), Internal Revenue Code as enacted in 1939), providing in part, as follows:

SEC. 406. TITLE 1A NET INCOME.
For the purposes of this title the term "Title 1A net income" means the net income with the following adjustments:
(a) ADDITIONAL DEDUCTIONS.—There shall be allowed as deductions—
(1) Federal income, war-profits, and excess-profits taxes paid or accrued during the taxable year to the extent not allowed as a deduction under section 23; * * *

The sole contention made by respondent on this second issue is that the additional deductions allowed by section 406 (a) (1) of the Revenue Act of 1938 (now, in substance, section 505 (a) (1), Revenue Code as operative in 1939) are applicable only to Federal income taxes paid by a taxpayer in discharge of a liability for its own income taxes and not in discharge of a liability for such taxes of another corporation; and that when petitioner paid the income tax of Acee Corporation for 1936 it was paying that tax as an assumed debt and

not as an income "tax liability" of its own, citing *New Colonial Co.* v. *Helvering*, 292 U. S. 435, and *Jones* v. *Noble Drilling Co.*, 135 Fed. (2d) 721. We think this contention of respondent is completely foreclosed by our holding in *Alaska Salmon Co.*, 39 B. T. A. 455, wherein we held in the case of a merger of a Washington corporation into a California corporation that "the tax liability" of the Washington corporation became "the tax liability" of the California corporation, applying the same rule as was applied in *Bowman Hotel Corporation*, 24 B. T. A. 1193, and *Trahern Pump Co.*, 27 B. T. A. 363, with regard to consolidated corporations. The Delaware statute here considered is, in effect, the same as the Washington and California statutes as considered together in the *Alaska Salmon Co.* case.

The authorities cited by respondent do not support his contention and are not contrary to the holding in the *Alaska Salmon Co.* case.

The *New Colonial Co.* case is clearly distinguishable from the instant case, among other respects, in that there a deduction for a loss was sought by a new corporation which had acquired, through an exchange of its stock, the assets, liabilities, and business of an old corporation, which loss had been sustained by the old corporation prior to the transfer. The old corporation, although transacting no business after the transfer, remained in existence throughout the years for which the new corporation claimed the deduction. That case involved no question, as is here, of whether under a statutory merger the payment by the surviving corporation of Federal income taxes due from a merged corporation was payment of a tax liability of the surviving corporation and consequently deductible by it. That case is further distinguishable here, as was done in *New York Cent. R. Co.* v. *Commissioner*, 79 Fed. (2d) 247; certiorari denied, 296 U. S. 653, where it was held that a loss on bond discount on bonds sold by a predecessor corporation which had been consolidated with other corporations to form a new corporation was not a loss of the predecessor corporation, but was a loss of and deductible by the new corporation because where the bonds were matured and paid by the new corporation that corporation would sustain the loss occasioned by the bond discount. The court, with reference to the Commissioner's contention that allowable deductions are personal to the taxpayer and could not be transferred to or be used by another corporation, distinguished the *New Colonial Co.* and other cases cited in support of that contention by saying:

The Commissioner argues that allowable deductions are personal to the taxpayer and cannot be transferred to or used by another. But the cases which announce this doctrine deal with losses sustained by a predecessor and sought to be deducted by a successor. * * * In the case at bar, no loss was sustained by the issuing corporations in selling their bonds at a discount; the loss will be sustained by the consolidated corporation when the bonds mature and are paid. Hence the deductions here in question are by way of anticipation of the taxpayer's own loss and should have been allowed.

Here, the income tax of the Acee Corporation for 1936 claimed by petitioner to be deductible by it was paid by petitioner as the surviving corporation and not by Acee Corporation.

In the *Jones* v. *Noble Drilling Co.* case the sole question was whether a surviving corporation into which three predecessor corporations had been merged was entitled to claim a dividend paid credit carry-over. The claimed credit was in respect to dividends paid by one of the predecessor corporations and the credit could have been claimed by that corporation had it continued to exist as a separate and distinct corporation after the merger. The court held that the surviving corporation was not entitled to the credit because the predecessor had *itself* paid the dividends sought to be claimed as a dividend carry-over by the surviving corporation, and the right to a deduction for such carry-over was in the predecessor and was not transferable to the surviving corporation. Here, the petitioner itself paid the dividends sought to be claimed as a carry-over and the case is distinguishable in this vital respect, if none other, from the *Noble* case. The principle of this distinction was recognized by the *Noble* case itself in distinguishing the case of *Helvering* v. *Metropolitan Edison Co.*, 306 U. S. 522, wherein a corporation taxpayer, the survivor in a merger, had acquired the assets and assumed the liabilities of a subsidiary corporation which had issued bonds at a discount. The question presented in the *Metropolitan Edison* case was whether the taxpayer could deduct the unamortized bond discount on the bonds paid by it. The question was decided in favor of the taxpayer, and in distinguishing that case from its own holding the court in the *Noble* case said, *inter alia:* "In that case, the corporate taxpayer sought the deduction of deferred interest paid by it. In the instant case, the surviving corporation seeks to avail itself of a deduction of dividends paid by another corporation."

As to the second issue we hold that the amount of the Federal income tax of the Acee Corporation for 1936 paid by petitioner in 1937 was paid on petitioner's tax liability and is deductible from its net income in computing its Title 1A net income for the purpose of determining its dividend carry-over from 1937 to 1939.

The third issue involves the proper method of computing the petitioner's dividends paid credit for the purpose of ascertaining the amount of its net income subject to personal holding company surtax for the year 1939. The error particularized on brief by the petitioner is that "in computing the dividend carry over from 1938 to 1939, [the respondent] reduced the dividends paid credit for 1938 by $14,463.37 interest on obligations of the United States," contrary to the provisions of section 405 (a) of the Revenue Act of 1938.

The statute controlling the surtax of personal holding companies for the year 1939 is subchapter A of chapter 2 of the Internal Revenue

Code as enacted in 1939. Section 505 of the code defines what is called "Subchapter A Net Income" as the net income with certain specified adjustments relating to deductions. Section 500 of the code imposes the surtax upon the "undistributed subchapter A net income," which is defined in section 504 as follows:

For the purposes of this subchapter the term "undistributed subchapter A net income" means that subchapter A net income (as defined in section 505) minus—

(a) The amount of the dividends paid credit provided in section 27 (a) * * * (computed without its reduction, under section 27 (b) (1), by the amount of the credit provided in section 26 (a), relating to interest on certain obligations of the United States * * *).

The dividends paid credit provided in section 27 (a) of the code, in so far as this case is concerned, with respect to any taxable year, is the sum of:

(1) The basic surtax credit for such year, computed as provided in subsection (b);

(2) The dividend carry-over to such year, computed as provided in subsection (c).

The pertinent provisions of section 27 (c) respecting the dividend carry-over are as follows:

(c) DIVIDEND CARRY-OVER.—There shall be computed with respect to each taxable year of a corporation a dividend carry-over to such year from the two preceding taxable years, which shall consist of the sum of—

(1) * * *; and

(2) The amount, if any, by which the basic surtax credit for the first preceding taxable year exceeds the adjusted net income for such year.

In the case of a preceding taxable year, referred to in this subsection, which begins in 1937, the adjusted net income shall be the adjusted net income as defined in section 14 of the Revenue Act of 1936, and the basic surtax credit shall be only the dividends paid credit computed under the Revenue Act of 1936 without the benefit of the dividend carry-over provided in section 27 (b) of such Act. In the case of a preceding taxable year, referred to in this subsection, which begins in 1938, the adjusted net income shall be the adjusted net income as defined in section 13 (a) of the Revenue Act of 1938, * * * and the basic surtax credit shall be the basic surtax credit as defined in section 27 of the Revenue Act of 1938, * * *

The determination of the dividend carry-over from 1938 to 1939, therefore involves computations of the petitioner's basic surtax credit for 1938 and of its adjusted net income for 1938, both computations to be made pursuant to provisions of the Revenue Act of 1938. Section 27 (b) (1) of the 1938 Act states that the "basic surtax credit" includes, among other elements, "the dividends paid during the taxable year, * * * reduced by the amount of the credit provided in section 26 (a), relating to interest on certain obligations of the United States," and, as section 504 of the code as enacted in 1939 provides that the amount of the dividends paid credit provided in section 27 (a)

must be computed *"without its reduction, under section 27 (b) (1)"* by the amount of the credit so provided in section 26 (a), the intent is plain that the basic surtax credit of a personal holding company is not to be reduced by interest received on United States obligations. The respondent, in computing the dividend carry-over from 1938 to 1939, reduced dividends paid during 1938 by interest received on United States obligations in the amount of $14,463.37, contrary to section 504, *supra*. This he concedes.

The real difference between the parties arises over whether the petitioner's adjusted net income for the preceding year 1938, to be used in computing the dividend carry-over, is to be reduced by such interest. In computing the dividend carry-over from 1938 to 1939, the respondent used the figure of $39,241.48 as representing the adjusted net income for 1938. That amount is the petitioner's net income for 1938 after excluding $14,463.37 interest received on obligations of the United States. He now contends that he should not have deducted such interest in computing the adjusted net income for 1938; that the adjusted net income to be used in the computation is its total net income of $53,704.85 ($39,241.48 plus $14,463.37); and that when the latter amount is subtracted from the $57,246.75 of dividends paid in 1938, the resulting dividend carry-over from 1938 is $3,541.90—the same amount which he allowed in his notice of deficiency.

The contention is made in the face of the positive direction of 27 (c) of the Code of 1939 that in the case of a preceding taxable year which begins in 1938 the adjusted net income "shall be the adjusted net income *as defined in section 13 (a) of the Revenue Act of 1938"* (emphasis supplied), and in the face of the provision of section 13 (a), that the term "adjusted net income" means "the net income minus the credit provided in section 26 (a), relating to interest on certain obligations of the United States." The respondent asks us to say that this language does not mean what it says in such plain terms, but that it means "the personal holding company adjusted net income (Title 1A net income in 1938) which amount is computed without reduction of interest on obligations of the United States." This we can not do. As a matter of fact the respondent has given the same effect as we do to the positive terms of the statute in his own regulations under the Code of 1939. Thus, in section 19.27 (c)–1, Regulations 103, he states: "In computing the dividend carry-over the adjusted net income for a preceding taxable year which begins in 1938 shall be the *adjusted net income as defined in section 13 (a)* of the Revenue of 1938." (Emphasis supplied.)

We are of the opinion that the petitioner in computing its dividends paid credit is entitled to have its dividend carry-over from 1938 to 1939 computed on the basis of its adjusted net income as defined in

section 13 (a) of the Revenue Act of 1938; that is, its net income minus the credit for the interest of $14,463.37 received by it on obligations of the United States, and we so hold.

*Decision will be entered under Rule 50.*