**NATIONAL CITY LINES, Inc. v.
UNITED STATES.**

No. 10520.

United States Court of Appeals
Third Circuit.

Argued Jan. 21, 1952.

Decided June 19, 1952.

Rehearing Denied Aug. 5, 1952.

Melva Graney, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Edward J. P. Zimmerman, Sp. Assts. to Atty. Gen., William Marvel, U. S. Atty., Washington, D. C., on the brief), for defendant-appellant.

Francis X. Downey, New York City (Allan F. Ayers, Jr., New York City, Hugh M. Morris, Wilmington, Del., Hodges, Reavis, McGrath, Pantaleoni & Downey, New York City, Morris, Steel, Nichols & Arsht, Wilmington, Del., on the brief), for plaintiff-appellee.

Before MARIS and KALODNER, Circuit Judges, and STEWART, District Judge.

KALODNER, Circuit Judge.

The sole question presented by this appeal is whether payments received by a taxpayer, representing interest for periods prior to its "flat" [1] purchase of certain securities, should be treated as a return of capital or as taxable income.

The pertinent facts are as follows:

The St. Louis Public Service Company, a Missouri transportation corporation, as a result of reorganization proceedings under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, issued in 1939 certain securities consisting of $15,865,000 twenty-five year convertible income bonds and $4,200,655 twenty-five year collateral trust notes, Series A to I, inclusive. The issues were respectively governed by separate trust indentures, and separate trustees existed for each. As collateral security for the payment of the notes, there was deposited with the trustee for the issue of notes $6,160,950 face amount of the income bonds, being $1,466.66 for each $1,000 principal of the notes.[2] Both the notes and bonds were dated as of March 1, 1939, and bore maturity dates of March 1, 1964.

The notes, and the indenture securing them, provided as to interest: Prior to maturity no interest was to be paid on the notes except out of interest paid on the income bonds pledged as collateral. All interest received on the collateral bonds was to be paid on the notes until all interest on the notes at the cumulative rate of 4% had been paid.[3] Any excess of interest received on the bonds over and above what was required interest on the notes was to be used to purchase notes on tender or call notes for redemption. Interest on the bonds was non-cumulative and was payable only out of earnings. Interest on the bonds, if earned, was payable on May 15th of each year for the preceding calendar year; interest on the notes was payable on May 31st of each year out of the bond interest received by the trustee under the notes. After maturity, the notes were to bear interest at 4% per annum, cumulative.

The National City Lines, Inc. ("taxpayer"), between December 20, 1940, and

1. By "flat" purchase is here meant a purchase of a security for one specified sum without distinction as between principal and interest thereon.

2. The notes were also secured by voting trust certificates representing 33,252 shares of the debtor's Class B stock, not here relevant.

3. Pertinent provisions of the notes are as follows: "Prior to the maturity of this Note, the Corporation shall be under no obligation to pay any interest on this Note, except out of interest paid on the Twenty-Five Year Convertible Income Bonds pledged to secure this and other Notes of this Series. All interest payments received on the Twenty-Five Year Convertible Income Bonds of the Corporation pledged to secure this Note and other Notes of this Series shall be applied to pay interest on this Note and the other Notes of this Series until there shall have been paid on this Note and the other outstanding Notes of this Series a sum equal to interest at the cumulative rate of four per cent (4%) per annum on the principal amount hereof to the dates of the payments of such interest, * * *"

The indenture securing the notes provided: "The Corporation covenants and agrees that it will from time to time pay interest upon the income bonds pledged hereunder at the same rate and at the same time as it pays interest upon the other Income Bonds, such interest to be paid to the Trustee hereunder either directly by the Corporation or by the trustee under the indenture securing the Income Bonds out of funds deposited with such trustee under the terms of such indenture."

January 3, 1941, made three "flat" purchases of 90% of the outstanding notes, at the rate of $18 for each $100 of principal amount. The total face amount of the notes thus purchased was $3,801,592.77;[4] the total purchase price was $684,286.65; the expenses of the various purchases amounted to $29,671.43; the aggregate cost of the notes to the taxpayer was $713,956.08.

At the time of these purchases the amount of unpaid interest on the notes, at the cumulative rate of 4%, amounted to $232,322.65.[5]

On May 31, 1941, the note trustee paid the taxpayer $28,877.15, representing partial interest for the period prior to its acquisition of the notes. On May 31, 1942, the note trustee made a similar payment of $223,024, of which $203,445.50 represented interest for periods prior to taxpayer's purchases. The Commissioner of Internal Revenue included the amounts of these two prior-period payments in tax payer's gross income for the years 1941 and 1942, respectively, under Section 22(a) of the Internal Revenue Code.[6] Taxpayer contended that the sums representing interest for periods prior to its acquisition of the notes should not have been treated as income but as a return of part of its capital investment, and filed an unsuccessful claim for refund. Thereafter it filed suit in the court below to recover the additional taxes, with a resultant judgment in its favor. 97 F.Supp. 283. This appeal by the United States followed.

In our view the learned District Judge erred in ruling that the entire amount in dispute constituted a return of capital.

■ It is well settled that when securities are purchased at a "flat" rate, interest accrued and in default at the time of purchase, when paid, is a return of capital and not taxable income. Erskine Hewitt v. Commissioner, 1934, 30 B.T.A. 962; Clyde C. Pierce Corp. v. Commissioner, 5 Cir., 1941, 120 F.2d 206; R. O. Holton & Co. v. Commissioner, 1941, 44 B.T.A. 202; Noll v. Commissioner, 1941, 43 B.T.A. 496. However, in order to merit such treatment the interest must have actually accrued as of the date of purchase. The liability of the debtor to pay the interest must have already become fixed; it cannot be contingent upon the happening of some future event. While there are no cases expressing this distinction in the context now under consideration, the Supreme Court has repeatedly recognized it with regard to the deduction of items of expense by accrual basis taxpayers. Such deductions are allowed in the year of actual payment where it can be shown that the liability for the expense was not incurred unconditionally in an earlier year. "It has long been held that in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent * * *." Dixie Pine Products Co. v. Commissioner of Internal Revenue, 1944, 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 420; Security Flour Mills Co. v. Commissioner of Internal Revenue, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Lucas, Commissioner of Internal Revenue v. American Code Company, Inc., 1930, 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538. We recently applied the distinction in Pierce Estates, Inc. v. Commissioner, 3 Cir., 1952, 195 F.2d 475, in which a corporate taxpayer was allowed to

---

4. The dates and amounts of purchases were as follows:

| Date | Series | Face Amount |
|---|---|---|
| Dec. 20, 1940 | A | $1,260,196.50 |
| Dec. 20, 1940 | B | 1,260,196.50 |
| Dec. 20, 1940 | D | 420,065.50 |
| Dec. 20, 1940 | G | 126,019.65 |
| Dec. 20, 1940 | I | 63,009.82 |
| Dec. 28, 1940 | F | 210,082.75 |
| Jan. 3, 1941 | C | 462,072.05 |
| Total | | $3,801,592.77 |

5. On May 31, 1940, prior to taxpayer's acquisition of the notes, interest payments of $43,545.43 had been made to the former holders. These were the only payments made since the issuance of the notes in 1939.

6. 26 U.S.C. § 22(a).

deduct past due interest on its debenture notes in the year of payment, where the notes provided that interest thereon was payable only out of corporate income, as ascertained and declared by the board of directors.

 Correlatively, in the instant case, the interest on the trust notes cannot be said to have "accrued" until the liability therefor became absolute. Under the terms of the notes, the obligor, St. Louis Public Service Company, did not bind itself unconditionally to pay any interest either prior to or at maturity. Payment of interest on the notes was contingent upon the payment of interest on the collateral income bonds, which in turn was payable only out of current earnings. In no event could the obligation to pay interest on the notes for any particular year accrue until the Company's earnings for that year were finally ascertained, because only when there were earnings did the obligation to pay interest on the bonds mature.

Taxpayer made three separate purchases of the notes, two in December of 1940 and one on January 3, 1941. The Company's earnings for 1940 were not determined until December 31st of that year. Consequently, it was only on the notes purchased thereafter that interest was in default for the year 1940. Of the payment of $28,877.15 received from the trustee on May 31, 1941, only $3,509.94 represented interest on the notes of Series C, purchased on January 3, 1941. That amount constituted a return of capital under the rule of Erskine Hewitt v. Commissioner and Clyde C. Pierce Corp. v. Commissioner, supra. The balance of the $28,877.15, as well as the entire sum of $223,024 received on May 31, 1942, was properly included by the Commissioner as income for the year of receipt.[7]

The government contends that none of the sums in question should be treated as a return of capital, and that even the

$3,509.94 interest on the Series C notes, purchased January 3, 1941, should be included in gross income, reasoning as follows: Under the terms of the notes, interest thereon was payable only out of interest "paid" on the bonds; interest on the bonds for each year was not actually paid until May 15th of the following year; therefore, the obligation to pay interest on the notes did not accrue until after that date. We cannot agree with this line of reasoning. While the bond trustee did not have to make physical payment of interest to the note trustee until May 15th of the year following earnings, the obligation to pay the bond interest matured as soon as earnings for each year were determined. It is immaterial that the date of payment was deferred.

For the reasons stated the judgment of the District Court will be reversed and the cause remanded with directions to proceed in accordance with this opinion.

---

7. We are not persuaded by the authorities cited by taxpayer. I.T. 3689, 1944 Cum. Bull. 65, concerned debentures which carried cumulative interest payable absolutely at maturity, which distinguishes them from the securities in the instant case. The two special Bureau rulings relied upon, unofficially reported in 423 CCH 6196 and 423 CCH 6335, are likewise not controlling.