WARNER A. SHATTUCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 51263. Filed December 9, 1955.

*Robert C. Harris, Esq.*, for the petitioner.
*Aaron S. Resnik, Esq.*, for the respondent.

**OPINION.**

HARRON, *Judge:* The issue is whether part of the payments received by petitioner for his 5 per cent bonds from Marblehead, the issuing corporation, represents realization of accrued interest, rather than a return of capital.

As the Court analyzes the issue, there is a preliminary question, whether the transaction involved a purchase and sale, or redemption of the bonds. The parties appear to have passed over this point in a superficial way. Clarification of the matter will remove an element of ambiguity which we think must be present otherwise.

The indenture under which the 5 per cent interest bonds were issued specifically covers redemption of the bonds. It is provided that bonds will be redeemed at the maturity date, and that they may be redeemed before then, on any interest date, upon the issuance of call by Marblehead for redemption. In either instance, the issuing corporation was obligated to pay the par value of each bond plus unpaid interest which had accrued to the redemption date. It is provided in the indenture that if any bond is called for redemption before the date of maturity, no premium could be paid by the corporation and, accordingly, only par could be paid, at the most, for a bond, exclusive of any accumulated or current interest which might be due. The evidence provides an illustration of the procedure which could be and was followed by Marblehead in exercising its right to elect to call bonds for redemp-

tion before the maturity date. Bonds were called for redemption in 1951. The corporation gave notice of its election and it was stated in the notice that the bonds which were called would be redeemed for the par value plus the unpaid interest which would have accrued up to the redemption date.

Petitioner's bonds were not called and Marblehead did not acquire them pursuant to the indenture's provision for calling bonds for redemption.

Marblehead had the right under the indenture to purchase its bonds on the open market or at private sale. Marblehead purchased petitioner's bonds from him in a private sale, and its authorization to do so is found in the indenture's provision relating to that method of acquisition.

We are of the opinion that the transaction in which petitioner disposed of his bonds was precisely what it is said to be, a purchase by the corporation in acceptance of petitioner's offer to sell. There is no testimony in this case of any officer or director of Marblehead. All of the facts have been stipulated. There is nothing in the record which provides a basis for a different conclusion about this point. For reasons of clarification, and because petitioner refers to section 117 (f) of the 1939 Code, we believe a distinction should be made between the corporation's calling of bonds for redemption, and the corporation's practice of purchasing its debentures at private sale or on the open market.

Another point requires consideration. The parties seem to be in disagreement about the meaning of the phrase, "at a price not to exceed the redemption price," which appears in the indenture's clause which gives Marblehead the right to purchase its outstanding bonds. We agree with the respondent that the provision in this clause of the indenture has the same meaning as a similar provision in the clause which gives the corporation the right to call bonds before the maturity date. That is to say, the price for which Marblehead may purchase its bonds is par, plus unpaid accumulated interest, plus current interest accrued to the date of the purchase, without premium, and no more; and, in a private sale or in one on the open market, Marblehead could not pay any sum above par; it could not pay par plus a premium.

We come now to consideration of the main question. Marblehead purchased petitioner's bonds for a flat price of $150 per $100 bond. Petitioner made an offer to sell his bonds for $150. According to the evidence, Marblehead at times offered to buy its bonds for a flat price. On February 24, 1949, Marblehead, by telegram, offered to purchase petitioner's bonds for $150 flat. Petitioner, in his subsequent offer to sell the bonds to Marblehead, did not use the term "flat," but we conclude that petitioner's offer to sell for $150 per bond meant "flat."

That assumption is indicated by the earlier offer of Marblehead to pay $150 flat. On this point, we observe that this aspect of the issue does not present a novel type of transaction. The fixing of a flat price is common in the making of sales of bonds which are in default in interest payments. It is stated in Prime, Investment Analysis, (2d ed. 1952) 105 that—

The price on a bond that is in default in the payment of interest * * * is usually quoted "flat"; that is, accrued interest is not added to the price. For example, the complete price of a bond (principal amount $1,000) quoted at 42 and selling "flat" is $420. The price of $420 includes any interest payment that may be anticipated at the time of sale.

The petitioner argues that he sold capital assets, the bonds. There is no issue about the point. The respondent agrees, and in making his determination he treated the bonds as capital assets and took into account 50 per cent of long-term capital gain. He treated payments received on the principal of the bonds as representing a return of capital. The issue presents the narrow question of, "What was the amount of the capital gain?"

The petitioner contends that the amount of the capital gain on each bond sold is the difference between his basis for a bond and $150. He argues that he sold the bonds for more than their face value, at a profit, because the bonds "had increased in value." There is no merit to this argument. The above quotation from Prime's Investment Analysis provides an explanation why the purchase price paid by Marblehead was more than par for each bond. Interest payments were in default. Also, Marblehead had expressed a willingness to pay petitioner $150 flat per bond. Furthermore, the bond indenture contained an interdiction against paying a premium over and above par for any bond, and, also, there is no evidence that the bonds, with interest in default and cumulated to the extent of $57.50 on each bond, had a value of more than par, $100, even if it be assumed that Marblehead would have acted ultra vires in paying a premium for each bond. However, we should not assume that Marblehead would have acted ultra vires. *Harry Sackstein*, 14 T. C. 566, 569. It is concluded that Marblehead did not pay a premium of $50 for each bond over and above the par value, $100.

It appears that the real point of petitioner's argument is that he claims that he sold a capital asset, a unit consisting of the principal of the bond plus the accrued unpaid interest, so that if he realized out of the receipt of $150 per bond some of the cumulated, accrued, unpaid interest, such return should be held in this case to have been a return of capital. But, in this case, the unpaid cumulated interest had accrued *after* petitioner acquired the bonds, not before. Although petitioner refrains from citing cases dealing with the point, we are

aware of the rule that where bonds with defaulted matured interest coupons attached are acquired, the capital investment in the bonds includes investment in the defaulted interest coupons, and collection of the coupons represents a return of capital rather than receipt of interest as that term is used in section 22 (a) of the 1939 Code. See *Erskine Hewitt*, 30 B. T. A. 962, 965; *Clyde C. Pierce Corp.* v. *Commissioner*, 120 F. 2d 206. But, as was pointed out in the *Erskine Hewitt* case—

The situation * * * should not be confused with that where the owner of bonds purchases them before there is any default in interest. In such a case there is of course no purchase of defaulted interest and in subsequent years if there is a default in interest, which is subsequently paid, it is income to the owner of the bonds in the year in which it is paid. Cf. *Landon* v. *Commissioner*, 59 Fed. (2d) 989, last paragraph of the court's opinion.

We do not have here the situation which was present in *Erskine Hewitt, supra*. In this case, the defaulted interest accrued after petitioner purchased the bonds, and if any part of the $150 received per bond represented collection of interest which accrued after petitioner acquired the bonds, such part is taxable as ordinary interest income under section 22 (a) of the 1939 Code. *Adrian & James, Inc.*, 4 T. C. 708, 715; *National City Lines, Inc.* v. *United States*, 197 F. 2d 754.

The facts in this proceeding closely resemble those in *Charles T. Fisher*, 19 T. C. 384, affd. 209 F. 2d 513, certiorari denied 374 U. S. 1014. In the *Fisher* case, notes were involved, here, bonds; but that difference is insignificant. A bond is much the same as a note. It evidences a loan in that the obligor under the bond agrees to repay the principal amount of the bond, and to pay interest for the use of the money received as the principal amount of the bond. In the *Fisher* case, at page 387, we used a bond as an analogy to a note. There we said that the taxpayer "does not escape tax on the amount received by him for the use of his money merely because it was paid to him by Prime instead of by the borrower," page 387. Here, petitioner cannot escape tax on an amount received by him for the use of his money merely because it was paid to him by the borrower, i. e., by the corporation which issued the bonds. In principle, the *Fisher* case is controlling here.

Petitioner contends that it makes a difference that the payments which he received were from the corporation which issued the bonds, and in support of this contention he cites section 117 (f)[1] of the 1939

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or a political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

Code, and *Commissioner* v. *Caulkins*, 144 F. 2d 482, affirming 1 T. C. 656, which is the chief authority on which petitioner relies. In our opinion, petitioner's case is not strengthened by referring to either section 117 (f), or the *Caulkins* case. There is no issue here on the point that the Marblehead bonds are bonds, and that if bonds of Marblehead are retired, such transaction will be treated as an exchange for the purpose of capital gains or losses. A corporation can purchase its bonds, and that is what Marblehead did. There was a sale of the bonds and the gain upon the sale is capital gain. Respondent agrees that there was realization of capital gain upon the sale of the bonds. Respondent objects to petitioner's resort to the provisions of section 117 (f) as a means of attempting to convert ordinary interest income into a return of capital.

We consider respondent's objection to be sound. The purpose underlying the enactment of section 117 (f), which is well known, was to accord to the redemption of bonds the same treatment as was then, and is, accorded to the sale or exchange of bonds. *McClain* v. *Commissioner*, 311 U. S. 527. The issue in this case does not involve section 117 (f). That which Marblehead paid for petitioner's bonds was not a payment made in connection with redemption and retirement. For that purpose, Marblehead would have had to pay, under the indenture, the par value plus the accrued and unpaid interest, or $157.50. The issue involves a *sale* of the bonds. There is no need to resort to section 117 (f). But if this reasoning involves hairline distinction, then we must say that if the transaction of petitioner is one to which 117 (f) applies, then we do not believe that, under the facts of this case, section 117 (f) was intended to apply to that portion of the amount paid by Marblehead which represents the discharge of Marblehead's existing obligation to pay accrued and defaulted interest on the bonds. We are unable to read the provisions of section 117 (f) as a limitation upon and curtailment of the provisions of section 22 (a), under the facts before us; i. e., when a flat payment is made for a bond on which the interest which accrued to the bondholder after he acquired the bond is in default at the time the issuer of the bond makes purchase thereof. Neither can we say that a different rule applies where the issuer of a bond purchases it from the bondholder, flat, than when a third party makes such purchase.

The respondent asserts that the only amounts which the Congress contemplated to be covered by section 117 (f) were the amounts which would have represented gain or loss under sections 111 and 112 of the 1934 Act. The Commissioner has issued a ruling which expresses this view, Rev. Rul. 433, I. R. B., 1955-27, 14-18. The ruling states, in part, as follows:

The reference in section 117 (f), *supra*, to bonds and other evidences of indebtedness *issued* by a corporation manifestly is to their principal and not to interest

thereon; hence, receipts in order to be within its ambit must be actually or in effect payments or other collections in discharge of their principal and not of interest thereon.

Under the facts of this case, we agree with the quoted part of the cited ruling. Cf. *District Bond Co.*, 1 T. C. 837, 840.

It is concluded that the provisions of section 117 (f), in this case, do not preclude taxing as ordinary interest income that part of the total sum received by petitioner for his bonds in partial discharge of Marblehead's obligation for defaulted interest.

There is no issue raised by the pleadings with respect to the respondent's allocation of the total sum received by petitioner to the discharge of Marblehead's obligation to pay the accrued and defaulted interest. The respondent's allocation is sustained. *Erskine Hewitt, supra; Adrian & James, Inc., supra; Charles T. Fisher, supra.* The respondent's determination is sustained.

Consideration has been given to *Commissioner* v. *Caulkins, supra.* We regard it as distinguishable from this case on the facts. It did not involve an interest-bearing bond, with interest payable on fixed dates, and with interest payments in default.

*Decision will be entered for the respondent.*