Simon JAGLOM and Marie Jaglom,
Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 164, Docket No. 27203.

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1962.

Decided June 4, 1962.

Saul Duff Kronovet, New York City (Silverson & Gelberg on the brief), for petitioners.

Giora Ben-Horin, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge.

The sole question to be decided is whether that portion of the proceeds from the "flat" sale of defaulted bond which is allocable to interest accrued while the taxpayers held the bonds is taxable as ordinary income or capital gain. We hold that it is ordinary income.

On March 15, 1950 the taxpayers purchased $50,000 face amount of Missouri Pacific Railroad Company 5% bonds upon which interest of $20,000, accrued from March 1, 1942 to March 1, 1950, was in default. These bonds were purchased "flat," i. e., without allocation of the purchase price between interest and principal, for $50,101.25 including commissions. The Missouri Pacific had been in bankruptcy since 1933. While the taxpayers held these bonds they received $17,500 on account of the interest that had accrued prior to their purchase of the bonds which they correctly treated as a return of capital. Since they were on the cash method of accounting and did not receive any payments on account of the interest which accrued while they held the bonds, they did not report any taxable interest income.

On November 5, 1954 the district court approved a request by the trustee in bankruptcy to pay all the defaulted interest. The Court of Appeals issued a temporary stay order, but vacated it on December 10, 1954, and on December 16, 1954 all of the interest in default was paid.

Meanwhile, on December 13, 1954, after the last hurdle to payment of all back interest had been cleared but before ac-

tual payment, the taxpayers sold their bonds "flat" for $59,747.50. On their 1954 federal income tax return the taxpayers reported $27,146.25 of long-term capital gain from this sale, computed as follows:

| | |
|---|---|
| Selling price | $59,747.50 |
| Purchase price | 50,101.25 |
| Less: Payments received on account of interest accrued at time of purchase | 17,500.00 |
| Taxpayers' basis | 32,601.25 |
| Long-term capital gain | $27,146.25 |

The Commissioner asserted a deficiency on the ground that part of the proceeds was ordinary income because it represented interest.[1] The Tax Court upheld the Commissioner's contention and fixed the amount of ordinary income at $10,988.24. 36 T.C. 126 (1961). The taxpayer appeals, and we affirm.

The parties agree that had the taxpayers held the bonds until December 16, 1954 when all back interest was paid, any payment representing interest accrued after the taxpayers acquired the bonds would have been taxable as ordinary income. See, e. g., Treas.Regs. § 1.61–7(c); Adrian & James, Inc. v. Commissioner, 4 T.C. 708 (1945); McDonald v. Commissioner, 217 F.2d 475 (6 Cir. 1954); Rev.Rul. 60–284, 1960–2 Cum. Bull. 464; 1 Mertens, Law of Federal Income Taxation § 6A.01, p. 3. The question for decision is whether, by selling the bonds rather than holding them until the accrued interest was paid the taxpayers can transform ordinary income into capital gain.

A literal reading of the Internal Revenue Code would make the entire gain on the sale of these bonds capital gain. Section 1222(3) defines long-term capital gain as the "gain from the sale or exchange of a capital asset held for more than 6 months," and § 1221 defines a "capital asset" as all "property held by the taxpayer" with five exceptions not here relevant. The definition of "capital asset" is considerably broader than is justified by the rationale for capital gains and if read literally would encompass income which Congress did not intend to give the benefit of the lower capital gains tax rate. Consequently, the courts have narrowly interpreted the definition of capital assets. See, e. g., Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52, 53–54, 76 S.Ct. 20, 100 L.Ed. 29 (1955); Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958). A distinction has arisen between an income-producing capital asset and the income which it produces. Gains arising from the sale of such an asset which has appreciated in value are capital gains, but gains flowing from the sale of an accrued right to collect the income from such an asset are not. Thus the right to collect ordinary income is not transmuted into capital gain by its sale. See, e. g., Hort v. Commissioner, 313 U.S. 28, 31, 61 S. Ct. 757, 85 L.Ed. 1168 (1941); Commissioner v. P. G. Lake, supra, at 266, 78 S.Ct. 691. If both the income producing asset and the right to accrued income from the asset are sold together, the purchase price must be allocated between the two, only the former being a capital asset.

There are many examples of this principle. Although an interest in a partnership is a capital asset, when a partner sells his share of the partnership, that portion of the proceeds which represents ordinary income which has accrued to the partnership but has not yet been reported on the partner's income tax return is ordinary income. See, e. g., United States v. Snow, 223 F.2d 103 (9 Cir. 1955); Helvering v. Smith, 90 F.2d 590

---

1. Section 61(a): "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (4) Interest." 26 U.S.C.A. § 61(a).

Unless otherwise mentioned, all citations are to the Internal Revenue Code of 1954.

(2 Cir. 1937); Tunnell v. United States, 259 F.2d 916 (3 Cir. 1958).[2] Since that part of the proceeds is received in lieu of the ordinary income, it is taxed as ordinary income, while that portion of the proceeds allocable to the partner's capital interest in the partnership is treated as return of capital and, to the extent that it exceeds his investment, capital gain.

Similarly, if a taxpayer who owns common stock upon which a dividend has accrued sells the stock and the right to the dividend, that part of the sales proceeds allocable to the sale of the right to the dividend is ordinary income. See Treas.Reg. § 1.61–9(c); Brundage v. United States, 275 F.2d 424, 427 (7 Cir.), cert. denied, 364 U.S. 831, 81 S.Ct. 48, 5 L.Ed.2d 59 (1960); cf. Rhodes' Estate v. Commissioner, 131 F.2d 50 (6 Cir. 1942). Or if a taxpayer sells his interest in movie rights including accrued royalties, those proceeds which represent the accrued royalties are ordinary income. Lasky v. Commissioner, 22 T.C. 13 (1954), appeal dismissed, 235 F.2d 97 (9 Cir. 1956), aff'd, 352 U.S. 1027, 77 S.Ct. 594, 1 L.Ed.2d 598 (1957). See also Sorensen v. Commissioner, 22 T.C. 321 (1954), where it was held that there was ordinary income on the sale of a stock option which, if exercised, would have produced ordinary income.

If a taxpayer holds an endowment, deferred income, or other type of insurance policy until maturity, the excess of the proceeds over his cost is ordinary income. Therefore, the courts have held that when a taxpayer sells his policy to a third person shortly before maturity, the gain, being in the nature of an interest return on his investment in the policy, is ordinary income. Commissioner v. Phillips, 275 F.2d 33 (4 Cir. 1960); Arnfeld v. United States, 143 Ct.Cl. 277, 163 F.Supp. 865 (1958), cert. denied, 359 U.S. 943, 79 S.Ct. 722, 3 L.Ed.2d 676 (1959); Roff v. Commissioner, 36 T.C. 818 (1961).

Similarly, before the 1954 Code specifically covered the subject,[3] most courts held that the excess of the amount received at the maturity of a non-interest bearing note or investment certificate issued at a discount over the cost thereof, being in the nature of an interest return on the capital invested, was ordinary income. Commissioner v. Morgan, 272 F.2d 936 (9 Cir. 1959); Rosen v. United States, 288 F.2d 658 (3 Cir., 1961); Rev.Rul. 56–299, 1956–1 Cum.Bull. 603. Contra, Commissioner v. Caulkins, 144 F.2d 482 (6 Cir. 1944). Therefore, the gain on a sale of such notes or certificates which was attributable to the discount is ordinary income. Stanton v. Commissioner, 34 T.C. 1 (1960), 74 Harv.L.Rev. 783 (1961); Paine v. Commissioner, 23 T.C. 391 (1954), reversed on other grounds, 236 F.8d 398 (8 Cir. 1956) (2 to 1).

■ This principle is applicable to the present case. Interest is the compensation paid for the use of money. The taxpayers held the Missouri Pacific bonds more than 4½ years and were entitled to substantial compensation for the use of their money. Since Missouri Pacific was not paying interest as it came due, the value of the bonds increased because the holder had the right to collect such accrued interest from the debtor. The taxpayers sold their right to the accrued interest along with the bonds. The person who purchased these bonds from the taxpayers thus paid the taxpayers for this accrued interest. When, three days after the sale, the accrued interest was paid to the purchaser, he would not be taxed as if he had received interest income, but would be treated as having received a return of capital, see, e. g., Treas. Regs. § 1.61–7(c); Hewitt v. Commissioner, 30 B.T.A. 962 (1934); Lloyd v. Commissioner, 154 F.2d 643 (3 Cir. 1946); McDonald v. Commissioner, 217

2. These cases arose before the problem was explicitly covered by legislation. See §§ 706(c) (2), 751 of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 706 (c) (2), 751.

3. Section 1232(a) (2), applicable to evidences of indebtedness issued after December 31, 1954.

F.2d 475 (6 Cir. 1954); National City Lines, Inc. v. United States, 197 F.2d 754 (3 Cir. 1952); R. O. Holton & Co. v. Commissioner, 44 B.T.A. 202 (1941), just as the taxpayers were treated when they received the $17,500 payment on account of interest which had accrued before their purchase of the bonds. Since the purchaser of accrued interest is not regarded as receiving interest income, the seller, who held the bond while the interest accrued, should be. He is receiving compensation for the use of his money whether the payment comes from the debtor or from a purchaser. Cf. Treas.Regs. § 1.61–7(d), providing that upon the sale of a bond, which presumably is not in default, between interest dates, that part of the selling price which represents interest accrued to the date of the sale is interest income. This has been the nearly unanimous holding of the previous cases on defaulted bonds sold "flat." Fisher v. Commissioner, 209 F.2d 513 (6 Cir. 1954), affirming 19 T.C. 384 (1952), cert. denied, 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136 (1954); Shattuck v. Commissioner, 25 T.C. 416 (1955); Tobey v. Commissioner, 26 T.C. 610 (1956); First Kentucky Co. v. Gray, 190 F.Supp. 824 (W.D.Ky.1960). Contra, Langston v. United States, 62–1 U.S.T.C. Para. 9243 (S.D.Fla.1961) (not officially reported).

The taxpayers argue that the Sixth Circuit in the Fisher case, supra, drew a distinction between a taxpayer who originally advanced the money to the debtor corporation and a taxpayer who purchased a debt instrument which had already been issued. Such a distinction would make no sense. Whether a taxpayer was the initial purchaser of a debt instrument or a later purchaser, he would be entitled to an interest return on his capital outlay. What the Sixth Circuit meant in its Fisher opinion was that any gain or loss due to a fluctuation in the value of the principal of the debt security

is capital gain, and as to that the holder is an investor, while any compensation for the use of capital, i. e., accrued interest,[4] whether paid by the debtor corporation or by the purchaser of the debt instrument is ordinary income, and as to that the holder is a lender.

The taxpayers also cite this court's opinion in Commissioner v. Carman, 189 F.2d 363, 365 (2 Cir. 1951) as requiring us to hold that on a "flat" sale of bonds "no part of the sale price is regarded as taxable interest." The Carman court was preoccupied with a radically different part of the Code, the tax-free reorganization provisions. But to the extent that the Carman decision bears upon the capital-gain versus ordinary-income question, we decline to follow it.

Having decided that allocation between capital gain and ordinary income was necessary, the Tax Court adopted a method of allocation which was favorable to the taxpayer. It allocated to ordinary income that percentage of the proceeds which the *face amount* of the ordinary income items bore to the *face amount* of the capital gain and ordinary income items:

Face amount of unpaid interest which accrued while taxpayer held the bonds

---

Face amount of principal
+ face amount of unpaid interest which accrued before taxpayer acquired the bonds
+ face amount of unpaid interest which accrued while taxpayer held the bonds

The result of using this formula was to charge the taxpayers with $10,988.24 of ordinary income, although they would have had $11,854.83 ordinary income if they had held the bonds until the interest was paid by Missouri Pacific. In a case like this where the taxpayers sold in anticipation of the imminent payment of back interest, the fair market value of

---

4. This statement applies only to interest which accrued while the taxpayer held the debt instrument. Since a taxpayer buys interest which has accrued before his purchase of the debt instrument, it is not compensation for his forbearance from the use of money, and as to him it is principal.

interest would very nearly approximate face value while the fair market value of the principal of a bankrupt company's bonds, not due for years, would probably be substantially below face value. Therefore, allocating according to the fair market value of the various items rather than by their face value would have charged the taxpayers with approximately the amount of ordinary income which they would have received if they had held the bonds until payment of the back interest by Missouri Pacific. However, since the Commissioner did not appeal, we do not pass upon the validity of the method of allocation used by the Tax Court.

Affirmed.