217 F.2d 475
 R. H. McDONALD, et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Charles E. LOVELL, et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Hans P. LAURITZEN, et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
ESTATE of E. H. KELLER, etc., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Harris B. McLAREN, et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Herman J. SHEEDY, et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
Charles B. McDONALD, et al., Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 Nos. 12122-12128.
 United States Court of Appeals, Sixth Circuit.
 Decided December 9, 1954.
 
 Herbert Bruce Griswold, Edwin G. Halter, Cleveland, Ohio (Kenneth Resseger, Cleveland, Ohio, on the brief), for petitioners.
 S. Dee Hanson, Washington, D. C. (H. Brian Holland, Ellis N. Slack, and Howard P. Locke, Washington, D. C., on the brief), for respondent.
 Before McALLISTER, MILLER, and STEWART, Circuit Judges.
 McALLISTER, Circuit Judge.
 
 
 1
 The issue before us is whether a distribution of cash from a trustee, under a so-called land trust, to a taxpayer partnership[1] constituted ordinary income or a return of capital. The determination of the issue depends on whether the amounts which were distributed had accrued before purchase by the taxpayer of certificates of the land trust in November and December of 1946, and in January of 1947. If the amounts accrued before the purchase of the certificates, they are to be considered a return of capital. If they accrued after the purchase, they are ordinary income, in accordance with the so-called "flat purchase" rule. This rule is to the effect that if the owner acquires bonds or notes with defaulted interest payments due thereon at a flat rate, the interest which had accrued thereon up to the time of purchase constitutes a return of capital when collected; whereas if the interest accrued thereon after purchase, it constitutes ordinary income when collected. See National City Lines v. United States, 3 Cir., 197 F.2d 754, 756-757. The Tax Court held that the amounts distributed had not accrued prior to the purchase of the certificates and, therefore, constituted ordinary income. As far as this case is concerned, it appears and is apparently admitted that the so-called rental involved, which was payable on the certificates, stands upon the same basis as interest on a bond or note.
 
 
 2
 The background of the controversy is as follows: A corporation acquired by purchase lands and buildings comprising valuable hotel property in Cleveland, Ohio, at a cost of more than $4,600,000. The corporation raised most of the money for the purchase through a transfer of the hotel property to a trustee, and receiving from the trustee several million dollars, which was procured by the issuance and sale of a large number of trust certificates, entitling the holders thereof to certain payments and an increased price upon redemption. Concurrent with the transfer of the property to the trustee for the certificate holders, the trustee leased the property back to the corporation.
 
 
 3
 The project thereafter fell on bad times and, in 1936, pursuant to the Bankruptcy Act, reorganization proceedings were undertaken, under Title 11 U.S.C.A. § 501 et seq. On December 31. 1946, the Plan of Reorganization which had been submitted to the interested parties and the district court was consummated by order of the district court.
 
 
 4
 The Plan provided, first, for the payment by the lessee corporation of rentals to the trustee for the certificate holders in the amount of 5% of the face value of the certificate, as "ordinary rental," plus one-half of the annual net earnings of the lessee company as "additional rental," and also one-half of the annual net earnings of the lessee, to be used in redeeming the certificates. The Plan further provided that out of these moneys received from the lessee, the trustee would pay to the certificate holders the amount of 5% of the face value of the certificates as "ordinary rental," and one-half of the lessee's net profits as "additional rental." Prior to the order of consummation of the Plan of Reorganization, and during the entire period of litigation relative to the proposed Plan, all of the payments of the so-called "ordinary rentals" (5% annually of the face value of the certificates) were paid by the lessee to the trustee, and, presumably, in turn, paid by the trustee to the certificate holders. The so-called "additional rentals" (one-half of the annual net earnings of the lessee) were not paid by the lessee to the trustee during the period of litigation relating to the reorganization, for the reason that the lessee was required to withhold such payments until further order of the district court.
 
 
 5
 On January 2, 1947, immediately after the Plan of Reorganization had been consummated, the district court, which had control of both the trustee and the lessee company, entered an order determining the lessee company's net earnings for the period from July 1, 1942 through December 31, 1945, and directed that $630,000 of such net earnings be transferred to the trustee as "additional rent;" and such transfer was, accordingly, made prior to January 18, 1947. Later, on March 14, 1947, the district court entered another order determining the operating company's earnings for the calendar year 1946 and ordered that the sum of $93,690.44 of such net earnings be transferred to the trustee as "additional rent" for the calendar year of 1946; and such transfer was made to the trustee prior to April 1, 1947.
 
 
 6
 Appellant partnership, as above mentioned, had purchased its land trust certificates in November and December of 1946, and in January of 1947. The face value of each certificate was $500, for which appellant paid $575. After the sum of $630,000 was transferred to the trustee pursuant to the first order of the court above mentioned, the trustee, on January 18, 1947, by a letter, advised the certificate holders of its receipt of $630,000 as rent and stated that "The additional rent of $630,000 aforesaid together with such other funds (including quarterly rent to March 15, 1947) as are then in the hands of the Trustee available for distribution will be distributed on April 1, 1947 to certificate holders of record on March 15, 1947."
 
 
 7
 Subsequent to the second order of the district court entered on March 14, 1947, as above mentioned, the trustee, on April 1, 1947, by a letter, advised the certificate holders of record on March 15 as to the amounts of rent for the first quarter of 1947, the "additional rent" for the period July 1, 1942 through December 31, 1945, and the "additional rent" for 1946, all of which payments were received by the certificate holders on April 2, 1947, enclosed in the trustee's letter of April 1, 1947.
 
 
 8
 It is submitted by the Commissioner that the trustee for the certificate holders was first obligated and empowered, under the specific terms of the Trust Agreement, as amended by the Plan of Reorganization, to distribute the amounts of additional rent here involved on April 1, 1947; that these amounts had not been transferred from the lessee to the trustee until shortly before April 1, 1947, and, consequently, long after the purchase of the certificates by appellant: that the trustee was neither obligated, authorized, nor empowered to distribute any money representing such "additional rentals" in its possession until April 1, 1947; that payment of the additional rental in question was wholly contingent upon the order of the court subsequent to the adoption of the Plan of Reorganization; and that, accordingly, accrual of the "additional rental" payable to the certificate holders did not become fixed until after appellant's purchase of these certificates.
 
 
 9
 Appellant taxpayer, however, contends that the rental which was distributed to appellant subsequent to its purchase of the certificates accrued prior to its purchase, since accrual takes place when there is a present fixed right to earned income, even though such income is not payable until a future time. It is pointed out that appellant did not purchase the certificates until after the order of confirmation of the Plan of Reorganization had become final, in that it was, at that time, no longer subject to appeal or review; that appellant's right to payment of the rental was fixed by such final order of confirmation by the court; and that it was possible to ascertain with reasonable accuracy the amount that would be available for payment of interest, and which was afterward actually distributed, since the lessee, or operating company, had, during the period of litigation with respect to the Plan of Reorganization, made all the payments required under the Plan except the "additional rental" here in question. Such payments had included the quarterly payments of "ordinary rentals," the fixed annual sum of $4,500 as the agreed compensation to the trustee, and, in addition, had paid all of the expense of the trustee; all taxes, assessments, charges, and levies of every kind imposed on the premises and the expenditures for keeping and maintaining all of the buildings in good condition, order, and repair, as well as insurance on the premises in an amount satisfactory to the trustee. The only rental payments that had not been made by the lessee to the trustee were those representing the "additional rentals" consisting of one-half of the lessee's net earnings, as specified in the lease. The only reason why the lessee did not pay these additional rentals to the trustee for the certificate holders, during the years in which they were due, was because the lessee was required to hold such "additional rental" payments, subject to the order of the district court, during the reorganization proceedings. Appellant submits that such additional rentals could have been ascertained with reasonable accuracy, and since appellant had the right to the payment of such amounts, such rents must be held to have accrued during the years they were due, and during which period they would have been paid, except for the interposition of the court.
 
 
 10
 The mere fact that the trustee did not have the so-called additional rental in hand at the time of appellant's purchase of the certificates and had not, at that time, been authorized, empowered, and obligated, by order of the district court, to distribute such rental to certificate holders, does not, in itself, show that the right of appellant as of that time to the payment of such rental was not fixed; or that the "additional rental" in question had not then accrued. In this case, the "additional rental" was overdue and unpaid at the time of appellant's purchase of the certificates. Such rental consisted of one-half of the net annual earnings of the lessee for the years in question. These amounts, instead of being paid to the trustee, had been retained by the lessee, to abide the further order of the court. The fact that the money representing "additional rents" remained in the hands of the lessee pursuant to the order of the court, instead of being transferred to the trustee, is not, in this case, the controlling factor. Both lessee and trustee were under the jurisdiction of the court with respect to all of these transactions and neither of them could do anything by way of transfer of funds or distribution without the court's consent. As has been said, the order of the district court confirming the Plan of Reorganization was afterward to be followed by the formal decree of consummation, but the decree of consummation was merely a formality having to do with other matters such as the discharge of the debtor and trustee and the closing of the estate. Title 11 U.S.C.A. § 628. The order of confirmation of the Plan had already become final, and not subject to review, prior to the time of appellant's purchase. However, it required the order of the court for a determination of the lessee's net earnings for those years, and formal direction to the trustee to transfer the net earnings to the trustee as "additional rental" for that prior period. It is true that the net earnings of the lessee for those years, as carried in the bookkeeping entries, could be ascertained merely by looking at the lessee's books, and such entries might have been known by everyone concerned — the lessee, the trustee, and the certificate holders, for the audited reports of the lessee's books were received by the trustee regularly during that period, from July 1, 1942 through December 31, 1945, and the trustee had, in turn, regularly communicated this information by letters during those years to the certificate holders. The real question is whether there was a clear basis for making a reasonable estimate of the "additional rental" due during those years, for when interest on an obligation is overdue and unpaid at the time of a flat purchase of such obligation, the interest, when later paid, is treated as a return of capital and not as taxable income, provided that the interest had actually accrued as of the date of purchase; Commissioner of Internal Revenue v. Carman, 2 Cir., 189 F.2d 363; National City Lines v. United States, 3 Cir., 197 F.2d 754; and items are accruable where the right to payment is certain and the amount of the accrual can be estimated with reasonable accuracy. Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 295, 52 S.Ct. 529, 76 L.Ed. 1111.
 
 
 11
 It is contended by respondent Commissioner that the additional rentals here in question had not accrued until after appellant purchased its certificates because of the fact that the amount of rental to be distributed could not be determined until after such purchase, since such additional rental received by the trustee from the lessee was subject, before distribution to the certificate holders, to all kinds of expenses; that, in this regard, the Trust Agreement as amended provided that "The Trustee shall have the right to use the rentals and income from the trust estate, or the proceeds of said rentals and income, to pay the compensation and all expenses of the Trustee, all rents required to be paid or permitted to be paid by the Trustee, all federal, state and local taxes, charges and assessments, whether levied or assessed under present or future laws, and whether levied or assessed against the Trustee or the trust estate, and all amounts paid or payable by the Trustee for the protection, preservation or benefit of the trust estate; and the Trustee shall further have the right to reserve and withhold out of said rentals and income received by it, or the proceeds thereof, and to retain in its hands, such amounts as the Trustee may from time to time deem necessary to provide for the payment thereafter of items of the classes aforesaid and to provide for the protection, preservation or benefit of the trust estate;" and distribute the balance to the certificate holders only after deducting the amounts paid and withheld as aforesaid.
 
 
 12
 It is, therefore, submitted that the amounts received from the lessee by the trustee were subject to so many unascertainable and future expenditures for the benefit of the trust estate that the amount to which appellant, as a certificate holder, would be entitled, could not be estimated with any reasonable accuracy or certainty; and, therefore, that any "additional rental" under such conditions of the Trust Agreement could not be said to have accrued prior to appellant's purchase of the certificates.
 
 
 13
 The foregoing, however, in so far as it emphasizes the function and duty of the trustee, seems beside the point. During all of this period, and during all of the period of litigation in regard to the Plan of Reorganization, it appears, from the findings of fact of the Tax Court, that the lessee, both under the lease as originally made and as thereafter modified by the Plan of Reorganization, was to pay and actually did pay, as part of the rent, all of the required regular payments of rent (5% of the face value of the certificates) to the trustee; all of the expenses of the trustee; all of the compensation for its services during those periods; all of the taxes, assessments, charges, and levies of every kind imposed upon the premises; all of the expenses for the keeping and maintenance of the buildings in good condition, order, and repair; and the maintenance of insurance upon the premises in such an amount as was satisfactory to the trustee. We can find, in the Trust Agreement, nothing that the trustee was required to use the rentals for, and no payments it was to make out of the rentals received from the lessee, which the lessee had not already paid during the periods in question and for which it had not accounted in its statements to the trustee during those periods, reflecting such disbursements in its statement of the annual net earnings, all of which was audited and approved by the trustee and by the court. The only amount of rental remaining in the lessee's hands that had not been transferred to the trustee was the "additional rental" for those periods.
 
 
 14
 The crucial question as to whether the additional rent received by appellant constituted a return of capital depends upon whether such additional rent, retained in the hands of the lessee to await the further order of the court, was subject to deduction, liability, or contingency that rendered the amount payable to the certificate holders uncertain; for unless such amount was certain or ascertainable with reasonable accuracy prior to appellant's purchase of the certificates, it could not be considered as accrued before that time.
 
 
 15
 We are of the view that the amount of additional rental due on the certificates could not be ascertained with reasonable accuracy prior to appellant's purchase. The reason why the court directed the lessee to hold all such additional rental until its further order was to insure that the costs and expenses of the Plan and the reorganization proceedings, to be thereafter determined by the court, would be paid; and such additional rents were specifically held subject to the payment of such expenses.
 
 
 16
 When, after the order of consummation of the Plan, the district court entered its order on January 2, 1947, it determined the lessee's net earnings for the period from July 1, 1942 through December 31, 1945, as $1,560,491.11, but instead of directing payment of one-half of this amount as additional rent, it directed payment to the trustee of the sum of $630,000 as additional rent. The court also directed the payment of $630,000 to the trustee to be used for the purchase of land trust certificates in accordance with the Plan; but these two payments left a balance of $300,491.11 to be held subject to the further order of the court; and in its order, the court explicitly set forth that such moneys should be subject, first, to the payment of the costs and expenses incident to the Plan and reorganization proceedings which were to be determined thereafter. How much of that balance held subject to the order of the court was afterward disbursed for the costs and expenses of the Plan and reorganization does not appear from the record.
 
 
 17
 Prior to the order of payment of the sum of $630,000 to the trustee as additional rental, it could not be ascertained what would be the amount of additional rental to which the certificate holders would be entitled; and that amount, further, could not thereafter be determined until a considerable time subsequent to the order of the court, as the amount properly payable for costs and expenses for the Plan and reorganization proceedings had not then been determined. In view of the fact that appellant purchased its certificates before such order, and before the amount of reorganization expenses had been deducted or determined, the amount of additional rental, not being ascertainable, could not be said to have accrued. Accordingly, the additional rent received by appellant was not a return of capital.
 
 
 18
 The foregoing disposes of all questions with respect to appellant's contentions regarding return of capital. From what has been above set forth, however, we are of the view that the additional rent received by appellant accrued and constituted income when it was determined what amount of additional rent was due; and since it was due during appellant's fiscal year ending March 31, 1947, it accrued during that period. National City Lines v. United States, 3 Cir., 197 F.2d 754, 757. Such additional rent was, accordingly, not taxable to the appellant in the year 1948 as contended by the Commissioner and as determined by the Tax Court. In addition, payments in the amount of $13.38 on certain of appellant's certificates for the period from January 1, 1946 through December 31, 1946, had not accrued prior to the time appellant purchased the certificates inasmuch as these particular certificates had been purchased by appellant during 1946. They did accrue, however, in 1947, during the partnership fiscal year ending March 31, 1947, and accrued as ordinary income to the partnership during that period. As to the seventeen certificates which appellant purchased on January 14, 1947, all interest thereon for periods prior to January 1, 1947, and all amounts due in respect of accrued and unpaid rent that had been ascertained for periods prior thereto were accrued at the time of the purchase of said certificates and constituted a return of capital to appellant under the flat purchase rule.
 
 
 19
 In accordance with the foregoing, the decision of the Tax Court is reversed and the case remanded for further proceedings in compliance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The above cases were consolidated and the facts and legal determination are the same for all