**FIRST KENTUCKY COMPANY,**
Plaintiff-Appellant,

v.

**William M. GRAY, District Director of Internal Revenue for Kentucky,**
Defendant-Appellee.

No. 14595.

United States Court of Appeals
Sixth Circuit.

Nov. 21, 1962.

James W. Stites, Jr., Louisville, Ky. (James W. Stites, Louisville, Ky., on the brief; Stites, Peabody & Helm, Louisville, Ky., of counsel), for appellant.

John A. Bailey, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., William B. Jones, U. S. Atty., on the brief), for appellee.

Before O'SULLIVAN, Circuit Judge, and BOYD and THORNTON, District Judges.

BOYD, District Judge.

The appellant is a Kentucky corporation engaged in the business of making investments. It instituted this suit in the District Court for refund of $21,007.98, income taxes paid under protest, plus interest. The payment of these taxes was made by appellant as a result of a deficiency assessment for the year 1954 by the Commissioner of Internal Revenue on the theory that accrued interest in default was part of the sale price of railroad bonds sold "flat" by the appellant, which part should have been declared by appellant as ordinary income for tax purposes. The appellant kept its books on a calendar year and cash basis method of accounting and in its return had treated the proceeds from all sales of bonds herein, which exceeded the adjusted basis on the bonds, as long term capital gain. The District Court ruled in essence that a part of the proceeds from the sales aforesaid was allocable to interest accrued during the period taxpayer held the bonds and was taxable as ordinary income, after determining on a proportionate basis that part of the sales proceeds which represented accrued interest. First Kentucky Company v. Gray, 190 F.Supp. 824, D.C.1960. The method of computing the proportionment is demonstrated in Shattuck v. Commissioner, 25 T.C. 416. From that part of the District Court judgment adverse to it the taxpayer has brought this appeal.

In the years 1939, 1940 and 1941, appellant purchased Missouri Pacific Railroad First and Refunding First Mortgage 5% Bonds of various series. Some of said bonds, $8,000.00 in principal amount, were sold in 1944 and are not here involved. The face value of the bonds with which we are concerned was $325,000.00 and the price paid for them by the appellant was $57,491.40. At the time of the purchase the railroad company was undergoing reorganization, which was begun in 1933, pursuant to provisions of Section 77 of the Bankruptcy Act.

In 1942 the Trustee in reorganization began to make certain distributions of accrued interest. Certain of these payments were received by appellant and used to reduce its tax basis as return of capital, since the interest paid had accrued before appellant's ownership of the bonds. When its basis on the various bonds was reduced to zero, the cash distributions were reported by the taxpayer as ordinary income. The propriety of this procedure is not in issue on this appeal.

The appellant sold the bonds in question "flat" and considerably above par at the then quoted market price of $387,577.40, the sales transactions taking place on November 17, 18, and 19, 1954. On November 9, 1954, the Interstate Commerce Commission had approved and certified to the District Court the fourth plan of reorganization of the railroad company in the aforesaid bankruptcy proceeding. This plan as finally modified was approved by the District

Court on February 25, 1955, In re Missouri Pacific Railroad Company, 129 F. Supp. 392, and was later affirmed by the Court of Appeals for the Eighth Circuit on September 14, 1955, Missouri Pacific Railroad Company 5¼% Secured Bondholders Committee v. Thompson, 225 F. 2d 761.

On November 5, 1954, pursuant to the proposed fourth plan, but before the sale of the bonds herein by the taxpayer, the District Court entered an order authorizing payment of accrued interest on the bonds under the following caption—"ORDER. Authorizing Trustee to Pay All Interest Matured at December 31, 1954, on Missouri Pacific Railroad Company First and Refunding Mortgage Bonds." In this order, however, the Court provided as terms, conditions, and reservations, that in the event the fourth plan of reorganization should fail of adoption or be modified, certain credits would be effected according to any changes necessitated. Approximately one month after the sales of the bonds herein by the taxpayer, these payments of accrued interest were made in accordance with the order aforesaid.

 The appellant contends that the profits realized from the sales of the bonds "flat" were capital gains and reportable as such for tax purposes. The reasoning behind this contention is grounded in the general understanding of that term "flat sale." Under its generally accepted meaning, there is no allocation for sale purposes between principal and interest. Thus, reasons the appellant, there should be none for tax purposes, and, although the bonds herein were sold above par, the appellee was not justified in allocating part of the sales proceeds to interest, taxable as ordinary income. This insistence we reject in the light of the "flat purchase rule" as announced by this court in McDonald v.

Commissioner of Internal Revenue, 217 F.2d 475 (C.A.6) 1954,[1] and in view of the recent decisions by the Courts of Appeals of the Second and Fifth Circuits in Jaglom v. Commissioner of Internal Revenue, 303 F.2d 847 (C.A.2) 1962, and United States of America v. Langston, 308 F.2d 729 (C.A.5), both cases upholding allocation as between principal and interest, for tax purposes, in above-par "flat" sales of Missouri Pacific bonds. We feel that had the appellant held the bonds here involved until actual payment of the defaulted interest, the proceeds without question would have been taxable as income. See Fisher v. Commissioner of Internal Revenue, 209 F.2d 513 (C.A.6), 1954, cert. denied 347 U.S. 1014, 74 S.Ct. 868, 98 L.Ed. 1136. Appellant disagrees with this conclusion, although the taxpayers in Jaglom and Langston apparently did not. Appellant cites as authority Sections 354 and 356 of the 1954 Internal Revenue Code in support of his argument that the payments made by the Trustee in reorganization would not have constitued income had appellant retained the bonds. However, those sections deal with treatment of gain on exchange of securities in the course of reorganizations. That these disbursements of interest did not constitute part of the exchange of securities under the fourth plan herein (two $500 face amount 4½% interest bonds for each $1,000 face amount 5% interest bonds) is evidenced by the statement of the District Court, which ordered the payments, when it subsequently approved that plan:

"The Plan provides that the First and Refunding Bonds are to receive payment of interest in full up to the effective date of the Plan, which is January 1, 1955, and the full face amount of their bonds in new Series B and C First Mortgage Bonds of

1. "This rule is to the effect that if the owner acquires bonds or notes with defaulted interest payments due thereon at a flat rate, the interest which had accrued thereon up to the time of purchase constitutes a return of capital when collected; whereas if the interest accrued thereon after purchase, it constitutes ordinary income when collected." 217 F. 2d at p. 476.

the reorganized Company, with interest at the rate of 4½%.

"At the time of hearing on the Plan the interest payments on the First and Refunding Bonds were made, bringing these bonds up to a current status. * * *"

In re Missouri Pacific Railroad Company, supra, 129 F.Supp. at page 397. Thus, the interest payments were paid as accrued interest and not within the intendment of Sections 354 and 356 as an exchange. The flat purchase rule would have required appellant to report the interest payments as income had he received them, rather than assigning, as he did, the right to receive them.

This brings us to the contention of appellant that the payment of the defaulted interest, which accrued during appellant's ownership of the bonds, was so contingent at the time of their sale that certainty of right to payment did not exist. The fourth plan, which was eventually adopted, had in fact been submitted to the District Court. The payment of the accrued interest had been ordered by the District Court. The appellant notwithstanding urges that this neither provided certainty of right to payment nor enabled reasonable accuracy in estimating the amounts of accrual payable. This court has indeed required such vesting aspects before interest can be considered "accruable" in the hands of a taxpayer. McDonald v. Commissioner of Internal Revenue, supra.

The factual circumstances at the time of the sales herein, then, become of paramount importance. In support of his "contingency" or "uncertainty" argument, the appellant points to the long, drawn-out reorganization process, which began in 1933 and which was featured by the submitting of four plans by the Interstate Commerce Commission before final consummation in 1955. It is not to be denied that during most of the lengthy, tortuous process the interests of the bondholders were to a considerable extent uncertain. But appropriate here are the observations of the Court of Appeals which affirmed the fourth plan, as it looked back on the circumstances preceding and at the time of the sale of these bonds:

"Thereafter, following conferences and negotiations (fully reported), the Trustee, in a petition to the Commission, presented to it stipulations signed by nearly all of the major parties in interest to the reorganization proceedings approving and agreeing to support what was described and referred to therein as an 'Agreed System Plan'. This plan modified in certain respects the plan approved by the Examiners in their proposed Report of February 17, 1954, which was a modification of the Commission's 1949 modified plan. The Trustee's petition and the stipulations were filed with the Commission on *May 12, 1954* and the modified Plan of Reorganization contained therein was approved by the Commission and filed with the District Court on *November 12, 1954*. The court approved plan before us is the 'Agreed System Plan' also referred to as the 1954 plan.

"The designation 'Agreed Plan' is not a misnomer. No other plan of reorganization in this matter has received the support of such vast preponderance of affected interests as is shown by the stipulations that were signed and submitted and holders of securities amounting to many millions of dollars who opposed the earlier plans are now agreeing to and approving this one. The holdings of those who are still opposing the approved plan probably do not equal one third of one per cent of the market values involved in the case." (Emphasis added.)

Missouri Pacific Railroad Company 5¼% Secured Serial Bondholders Committee v. Thompson, supra.

It was against this backdrop of circumstances that the District Court or-

dered the disbursement of interest before the sale of the bonds herein and it appears that any uncertainty surrounding the plan and the order made in accordance therewith was remote. True, the District Court in its order conditioned the payment, but more, it would appear, out of ordinary prudence and caution than likelihood that the plan would fail or be modified so as to overturn the payment of the accrued interest as "interest."

It is interesting to note that neither of the appellate courts in the Jaglom and Langston cases, supra, addressed themselves squarely to the "contingency" aspect. However, in Langston the District Court, which was reversed, did consider this aspect in holding for the taxpayer. The sale of bonds in Langston, it should be noted, took place in February, 1954, months before either the Jaglom sale or the sales in our case. (Unreported District Court opinion.)

We conclude that at the time of the sale of the bonds herein and in view of the attendant circumstances there was certainty of right to payment and the amount was estimable with reasonable accuracy, warranting the appellee's determination that the price at which these bonds were sold above par by appellant represented in part defaulted interest, which had accrued during the period appellant held these bonds, and was taxable as ordinary income. As was said in Helvering v. Horst, 311 U.S. 112 at 116, 61 S.Ct. 144 at 147, 85 L.Ed. 75 (1940):

> " * * * the rule that income is not taxable until realized has never been taken to mean that the taxpayer even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor."

There being no reversible error, the District Court is affirmed.