George M. JONES, Jr. and Eleanor M. Jones, Plaintiffs,

v.

UNITED STATES of America, Defendant (two cases).

Civ. Nos. 8773, C 63–136.

United States District Court
N. D. Ohio, W. D.

March 23, 1966.

Shumaker, Loop & Kendrick, John J. Kendrick, G. Charles Scharfy, Toledo, Ohio, for plaintiffs.

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, John G. Mattimoe, Asst. U. S. Atty., Toledo, Ohio, Richard M. Roberts, Acting Asst. Atty. Gen., David A. Wilson, Jr., Thomas F. Field, Attys., Dept. of Justice, Washington, D. C., for defendant.

KLOEB, District Judge:

These cases are before the Court upon the agreement of the parties that the within actions be submitted on the stipulations, the pleadings, depositions, and their respective briefs. The parties have stipulated as to the facts and the Court adopts the stipulations as its findings of fact.

In each of these cases, Eleanor M. Jones is the Plaintiff, her husband, George M. Jones, Jr., being joined for tax purposes, and she will hereinafter be referred to as "Plaintiff."

The actions involve claims for refund of taxes paid, which claims were disallowed by the District Director of Internal Revenue and thereafter pursued by actions timely filed by the Plaintiff for recovery of the sums paid.

These actions grow out of the purchase by Plaintiff in the year 1928, when she was a single person, of two single premium ten-year endowment policies. The

first one, case No. 8773 Civil, involves a policy purchased from the State Mutual Life Assurance Company of Worster, Massachusetts on April 23, 1928 by the payment of a single premium of $41,-520.00. This policy matured on April 23, 1938, at which time Plaintiff elected to have the matured proceeds paid to her in one hundred quarter-annual installments to be paid over a period of twenty-five years and until the matured proceeds, plus interest thereon, shall have been exhausted.

The second policy, being case No. C 63–136, was purchased by Plaintiff on April 27, 1928, from the Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts, by the payment of a single premium of $331,800.00, which policy matured on April 27, 1938, at which time Plaintiff elected to have the matured proceeds paid to her in one hundred quarter-annual installment payments of $4,784.68 each.

These actions grow out of the assignment of the remaining proceeds of these policies in the years 1953 and 1954 to a tax-exempt charitable foundation.

At pretrial of case No. 8773 Civil, it was suggested to the Court that a complaint in the second case was about to be filed and that further action be withheld until that case came at issue. Thereafter, and on October 1, 1965, this Court issued a pretrial order consolidating the two cases for the purpose of trial. Thereafter, and on October 4, 1965, the Stipulation of Facts hereinbefore referred to was filed. On December 28, 1965, it was further stipulated and agreed by the parties that the issue pertaining to legal fees and expenses was settled and need receive no further consideration at the hands of the Court. On December 29, 1965, the parties stipulated that briefs would be filed during a period to and including January 7, 1966, and that the cases would thereafter be submitted to the Court on the pleadings, depositions, stipulations, and briefs.

The Stipulation of Facts filed October 4, 1965 are as follows:

## "STIPULATION OF FACTS

"The parties hereby stipulate and agree that the following statements shall be taken as true for purposes of this action, and that the attached exhibits are authentic copies of the documents identified herein, provided, however, that this stipulation shall not prevent either party from objecting to the materiality or relevancy of such statements or exhibits.

## "BASIC FACTUAL BACKGROUND

"1. *The Parties.* The plaintiffs, George M. Jones, Jr., and Eleanor M. Jones, are, and were during the year here involved, husband and wife, citizens of the United States and residents of Wood County, Ohio, residing at 30357 East River Road, Perrysburg, Ohio. The defendant is the United States of America.

"2. *Year Involved.* This action involves federal income taxes for the calendar year 1954.

"3. *Accounting Method.* During all years pertinent herein, the plaintiffs prepared their annual federal income tax return, Form 1040, by use of the cash method of accounting, rather than the accrual method.

## "FACTS PERTAINING TO JURISDICTION

"4. *Filing of Tax Return and Payment of Tax as Shown Thereon.* The plaintiffs timely filed their joint federal income tax return for the calendar year 1954 on March 29, 1955, with the District Director of Internal Revenue at Toledo, Ohio. The tax shown as due thereon was timely paid in full.

"5. *Audit by Internal Revenue Service and Additional Tax Payments.* Subsequent to the events described in the previous paragraph of this stipulation, the Internal Revenue Service audited the plaintiffs' joint federal income tax return for the calendar year 1954, as the result of which audit the Internal

Revenue Service proposed an income tax deficiency with respect to that year in the amount of $51,378.60. Plaintiffs paid said additional tax of $51,378.60, plus interest thereon of $17,039.39, on October 25, 1960, and subsequently, on November 4, 1960, the Internal Revenue Service made a timely assessment of such tax and interest.

"6. *Claim for Refund.* On December 13, 1960, the plaintiffs filed a Claim for Refund, Form 843, with the District Director of Internal Revenue, requesting a refund of $68,342.95 (consisting of $51,322.25 in tax and $17,020.70 in assessed interest) together with statutory interest according to law. A duplicate copy of this Claim for Refund was filed with the District Director of Internal Revenue on June 9, 1961. This Claim for Refund and its duplicate were both timely under the provisions of Section 6511 of the Internal Revenue Code of 1954. A true and correct copy of the June 9, 1961 duplicate of this Claim for Refund is attached hereto and marked 'Exhibit H.'

"7. *Disallowance of Claim for Refund and Filing of Suit.* The Claim for Refund described in the previous paragraph of this stipulation was disallowed in full by the District Director of Internal Revenue by the mailing (via certified mail) of an official notice of disallowance dated September 22, 1961. Thereafter, this suit was timely commenced on September 16, 1963, within the period of limitations prescribed by Section 6532(a) (1) of the Internal Revenue Code of 1954.

"8. *Jurisdiction.* Based on the facts outlined in paragraphs 4, 5, 6, and 7 of this stipulation, the parties believe that this Court properly has jurisdiction under the provisions of Section 1346(a) (1) of Title 28 of the United States Code, as amended.

"ADJUSTMENTS IN DISPUTE

"9. *Audit Adjustments.* The audit adjustments by the District Director of Internal Revenue which led to the assessment of the deficiencies of tax and interest to which reference is made in paragraph 5 of this stipulation were as follows:

"(a) As to Massachusetts Mutual Life Insurance Company Policy Number 843,265:

   (1) Disallowance of Charitable Contribution Claimed on Return ...................... $51,696.63

   (2) Allowance of Charitable Contribution Not Claimed on Return ...................... (2,153.10)

   (3) Increase to Annuity Income ............... 730.47

"(b) As to State Mutual Life Assurance Company of Worcester Non-Negotiable Instalment Certificate Number 950:

   (1) Allowance of Charitable Contribution Not Claimed on Return ...................... (2,700.00)

   (2) Increase to Annuity Income ................ 666.52

   (3) Increase to Interest Income ................ 1,118.80

"(c) Disallowance of Deduction for Legal Fees Paid to the Law Firm of Cravath, Swaine & Moore ...... 9,535.41

"(d) Net Ammount Attributable to Three Adjustments Not Now in Dispute .......................... 77.85

     "Net Increase in Taxable Income .............. $58,972.58

"10. *Adjustments in Dispute.* The audit adjustments which are in dispute between the parties are adjustments (a) (1), (a) (2), and (a) (3); (b) (1), (b) (2), and (b) (3); and adjustment (c) as set forth in the previous paragraph of this stipulation.

### "DOCUMENTS

"11. The documents attached to this stipulation as Exhibits A through H, inclusive, and briefly described below, are true and correct copies of the original documents:

"(a) *Exhibit A.* The single premium endowment policy (including all attachments) issued by the State Mutual Life Assurance Company of Worcester, Massachusetts, on April 23, 1928. The policy number is 338,734.

"(b) *Exhibit B.* Non-Negotiable Instalment Certificate Number 950 issued by the State Mutual Life Assurance Company of Worcester, Massachusetts, on April 23, 1938.

"(c) *Exhibit C.* The agreement dated as of March 25, 1953, between Eleanor M. Jones and The State Mutual Life Assurance Company of Worcester, Massachusetts.

"(d) *Exhibit D.* The instrument entitled 'Assignment' dated April 28, 1953.

"(e) *Exhibit E.* The single premium endowment policy (including all attachments) issued by the Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts, on April 27, 1928. The policy number is 843,-265.

"(f) *Exhibit F.* The endorsement to Massachusetts Mutual Life Insurance Company Policy 843,265 which was received by Massachusetts Mutual on February 10, 1938.

"(g) *Exhibit G.* The instrument entitled 'Assignment' dated March 29, 1954.

"(h) *Exhibit H.* The duplicate of the plaintiffs' Claim for Refund, Treasury Form 843, pertaining to the calendar year 1954.

### "FACTS PERTAINING TO INSTALMENT CERTIFICATE 950

"12. On April 23, 1928, plaintiff Eleanor M. Jones (who for convenience will sometimes hereafter be referred to as the plaintiff) purchased a single premium endowment policy from The State Mutual Life Assurance Company of Worcester, Massachusetts, said policy being numbered 338,734. She paid a single premium of $41,520.00 for said policy. (This is the policy referred to in subparagraph 11(a) hereof, a true copy of which is attached hereto as Exhibit A.) All attachments which constitute a part of Exhibit A were accepted by The State Mutual Life Assurance Company at its home office.

"13. Policy Number 338,734 matured 10 years after issuance, to-wit, on April 23, 1938, the matured proceeds being $59,357.59.

"14. Shortly before the maturity of Policy Number 338,734, the plaintiff (then named Eleanor M. Bell) elected to have the matured proceeds paid to her in quarter-annual installments of $675.00 each until the matured proceeds, plus interest thereon, should be exhausted.

"15. The settlement election mentioned in the preceding paragraph was accepted by The State Mutual Life Assurance Company of Worcester, and was evidenced by the issuance, by the insurance company, of a so-called 'Non-Negotiable Instalment Certificate,' Number 950, in the face amount of $59,357.59. (This is the document referred to in subparagraph 11(b) hereof, a true copy of which is attached hereto as Exhibit B.)

"16. From and after the 1938 settlement mentioned in paragraphs 14 and 15, and until 1953, plaintiff received the quarter-annual installments of $675.00 each. On March 25, 1953, the plaintiff entered into an agreement with The State Mutual Life Assurance Company of Worcester. This agreement was drawn up and executed after consultation with officials of The State Mutual Life Assurance Company of Worcester by counsel for the plaintiff (Cravath, Swaine &

Moore of New York City.) (This agreement is mentioned in subparagraph 11 (c) hereof, and a true copy of this agreement is attached hereto as Exhibit C.)

"17. On April 28, 1953, the plaintiff executed the instrument entitled 'Assignment' which is referred to in subparagraph 11(d) hereof, and a true copy of which is attached hereto as Exhibit D. This instrument was delivered on April 28, 1953 to the Clement O. Miniger Memorial Foundation (sometimes hereafter referred to as the 'Foundation'), together with Certificate 950, and a duplicate original of this instrument was filed with The State Mutual Life Assurance Company of Worcester. This instrument was drawn up by plaintiffs' counsel, Cravath, Swaine & Moore. In executing and delivering the Agreement of March 25, 1953, and the instrument entitled 'Assignment' dated April 28, 1953, the plaintiff acted gratuitously; that is to say, she did not receive any consideration or tangible benefit in money or money's worth in or for the execution and delivery of the said documents.

"18. The quarter-annual cash payments on Instalment Certificate 950 by The State Mutual Life Assurance Company of Worcester in the years 1953–1963, inclusive, have been made as follows:

| "Period | Payee | Amount | |
|---|---|---|---|
| 1–23–53 | The Plaintiff | $ 675.00 | |
| 4–23–53 | The Plaintiff | 675.00 | |
| 7–23–53 | The Foundation | 675.00 | |
| 10–23–53 | The Foundation | 675.00 | |
| | Total 1953 Payments | $ 2,700.00 | $ 2,700.00 |
| Years 1954 through 1962 | The Foundation | $ 2,700.00 per year | |
| | Total 1954–1962 Payments | | $24,300.00 |
| 1–23–63 | The Foundation | $ 675.00 | |
| 4–23–63 | The Foundation | 675.00 | |
| Terminal Payment | The Foundation | | |
| | | $27,638.00 | |
| | Total 1963 Payments | $28,988.00 | $28,988.00 |
| | Total Payments | | $55,988.00 |

"19. The amounts listed in subparagraphs 9(b) (2) and (3) of this stipulation are, in the aggregate ($1,785.32), the amount which Mrs. Jones would have reported as 1954 annuity income with respect to Certificate 950 if she had not assigned the policy to the Clement O. Miniger Memorial Foundation in 1953. If it is determined by the Court that Mrs. Jones realized taxable income in the year 1954 with respect to Instalment Certificate 950, the proper amount of such income is $1,785.32 in annuity income, rather than the dollar amounts of interest and annuity income shown in subparagraphs 9(b) (2) and (3) with respect to Certificate 950.

"20. If Eleanor M. Jones were to have died prior to April 23, 1963, survived by her son, the remaining $675.00 quarter-annual payments on Instalment Certificate 950 would have been made to her son, George M. Jones, III, if he were then living, and, if not, to the other beneficiaries specified in Instalment Certificate 950.

"FACTS PERTAINING TO
POLICY 843,265

"21. On April 27, 1928, the plaintiff purchased a single-premium endowment policy from the Massachusetts Mutual Life Insurance Company of Springfield, Massachusetts, said policy being numbered 843,265. She paid a single premium of $331,800.00 for said policy. (This is the policy referred to in subparagraph 11(e) hereof, a true copy of which is attached hereto as Exhibit E.) All attachments which constitute a part of Exhibit E were accepted by the Massachusetts Mutual Life Insurance Company at its home office.

"22. Policy Number 843,265 matured 10 years after issuance, to-wit, on April 27, 1938, the matured proceeds being $478,466.93.

"23. Shortly before the maturity of Policy Number 843,265, the plaintiff (then named Eleanor M. Bell) elected to have the matured proceeds paid to her in 100 quarter-annual installments of $4,-784.68 each.

"24. The settlement election mentioned in the preceding paragraph was accepted by the Massachusetts Mutual Life Insurance Company, and was evidenced by an endorsement on the policy. (This is the endorsement to which reference is made in subparagraph 11(f) hereof, a true copy of which is attached hereto as Exhibit F.)

"25. From and after the 1938 settlement mentioned in paragraphs 23 and 24, and until 1954, the plaintiff received the quarter-annual installments of $4,784.68 each. On March 29, 1954, the plaintiff executed the instrument entitled 'Assignment' which is referred to in subparagraph 11(g) hereof, and a true copy of which is attached hereto as Exhibit G. This instrument was drawn up and executed after consultation with officials of the Massachusetts Mutual Life Insurance Company by plaintiff's counsel (Cravath, Swaine & Moore of New York City). This instrument was delivered on March 29, 1954 to the Clement O. Miniger Memorial Foundation, and a duplicate original was filed with the Massachusetts Mutual Life Insurance Company. In executing and delivering the instrument entitled 'Assignment' dated March 29, 1954, the plaintiff acted gratuitously; that is to say, she did not receive any consideration or tangible benefit in money or money's worth in or for the execution and delivery of the said document.

"26. The quarter-annual cash payments with respect to Policy Number 843,265 which were made by the Massachusetts Mutual Life Insurance Company in the year 1954 were paid as follows:

| "Installment Period | Amount Paid Plaintiff | Amount Paid Foundation | Totals | |
|---|---|---|---|---|
| Jan. 1954 | $ 4,784.68 (100%) | –0– | $ 4,784.68 | |
| Apr. 1954 | $ 4,066.98 (85%) | $ 717.70 (15%) | $ 4,784.68 | |
| July 1954 | $ 4,066.98 (85%) | $ 717.70 (15%) | $ 4,784.68 | |
| Oct. 1954 | $ 4,066.98 (85%) | $ 717.70 (15%) | $ 4,784.68 | |
| 1954 Totals | $16,985.62 | $2,153.10 | $19,138.72 | $19,138.72 |

"27. Additional percentage interests in this policy were given by Mrs. Jones to the Foundation, as follows: 1956—25%; 1957—20%; 1960—33%; 1961—7%. These percentages, when added to the 1954 initial gift of 15%, total 100%.

All payments after the 1961 gift, including the 1963 terminal payment of $293,-964.37, were paid by the insurance company to the Foundation.

"28. The amount listed in subparagraph 9(a)(3) of this stipulation is the additional amount of annuity income which Mrs. Jones would have reported on her 1954 income tax return with respect to Policy Number 843,265 if she had not made the 15% assignment recited in paragraph 25 of this stipulation. If it is determined that Mrs. Jones realized additional taxable annuity income for the year 1954 with respect to Policy Number 843,265, the proper amount of such additional income is $730.47.

"29. If Eleanor M. Jones were to have died prior to April 27, 1963, any funds then retained by the Massachusetts Mutual Life Insurance Company with respect to Policy Number 843,265 would have been payable to George M. Jones, III, if he were then living, as more fully specified in the February 10, 1938 endorsement to that Policy. The complete provisions governing the disposition of the funds payable in connection with Policy Number 843,265, including the provisions indicating the disposition of funds in the event that Mrs. Jones were to have been predeceased by her son prior to April 27, 1963, are contained in Exhibits E, F, and G, attached hereto.

### "FACTS PERTAINING TO THE CLEMENT O. MINIGER MEMORIAL FOUNDATION

"30. The Clement O. Miniger Memorial Foundation was incorporated on December 17, 1952, under the laws of the State of Ohio as a non-profit corporation. The foundation is named after Mrs. Jones' father. During the year 1954, this Foundation was an organization exempt from income tax under the provisions of Section 501(c) (3) of the Internal Revenue Code of 1954. Contributions to the Foundation were deductible under the provisions of Section 170(c) of the Internal Revenue Code of 1954, within the limitations prescribed by Section 170(b) of that Code.

"31. The contributions made by the taxpayers during 1954 to qualified charities or other organizations, including the claimed contribution of $51,696.63 described in subparagraph 9(a)(1), and in paragraphs 25 and 37, were within the percentage limitations prescribed by Section 170(b) of the 1954 Internal Revenue Code.

"32. During the year 1954, and at all times since, George M. Jones, Jr., who is identified in paragraph 1 hereof, has been the President of the Clement O. Miniger Memorial Foundation. The said Foundation is controlled by a Board of five Trustees, none of whom (save George M. Jones, Jr.) is related to the plaintiff. Eleanor M. Jones has never been a Trustee of the Foundation.

### "FACTS PERTAINING TO THE PLAINTIFFS

"33. The plaintiff, Eleanor M. Jones, was born on July 15, 1905. She was the only daughter of the late Clement O. and Eleanor F. Miniger. Clement O. Miniger died on April 23, 1944. Eleanor F. Miniger, his wife, died on May 30, 1931. Eleanor M. Jones was married to James B. Bell, Jr., from November 18, 1931 to December 1937, when such marriage was terminated by divorce. No children were born to Mr. and Mrs. Bell. Eleanor M. Jones married George M. Jones, Jr., on March 14, 1942, and has remained married to Mr. Jones since that time. George and Eleanor Jones have one child, George III, who was born on February 1, 1944.

"34. On March 29, 1954, Eleanor M. Jones was 48 years, 8 months, and 14 days old. At that time, her son, George M. Jones, III, was 10 years, 1 month and 28 days old. As of October 4, 1965, both Mrs. Jones and her son were still alive.

### "COMPUTATIONAL MATTERS

"35. The following possibilities or probabilities are computed on the basis of figures contained in the Tables indicated below:.

| "Description of Contingency | U. S. Life Table 38 (1939–41) | U. S. Life Tables 5 and 6 (1949–51) |
|---|---|---|
| "(1) As of March 29, 1954, the chance that the plaintiff (Mrs. Jones) would be alive on April 27, 1963, was: | .894869 | .935332 |
| "(2) As of March 29, 1954, the chance that the plaintiff's son, George III, would be alive on April 27, 1963, was: | .989153 | .991475 |
| "(3) As of March 29, 1954, the chance that the plaintiff would die prior to April 27, 1963, was: | .105131 | .064668 |
| "(4) As of March 29, 1954, the chance that the plaintiff's son, George III, would die prior to April 27, 1963, was: | .010847 | .008525 |
| "(5) As of March 29, 1954, the chance that the plaintiff would be dead and her son would be living on April 27, 1963, was: | .103991 | .064117 |
| "(6) As of April 28, 1953, the chance that the plaintiff (Mrs. Jones) would be alive on April 23, 1963, was: | .887629 | .930839 |
| "(7) As of April 28, 1953, the chance that the plaintiff's son, George III, would be alive on April 23, 1963, was: | .988291 | .990877 |
| "(8) As of April 28, 1953, the chance that the plaintiff would die prior to April 23, 1963, was: | .112371 | .069161 |
| "(9) As of April 28, 1953, the chance that the plaintiff's son, George III, would die prior to April 23, 1963, was: | .011709 | .009123 |
| "(10) As of April 28, 1953, the chance that the plaintiff would be dead and her son would be living on April 23, 1963, was: | .111055 | .068530 |

"36. The U. S. Life Table 38 to which reference is made in the previous paragraph is taken from the Department of Commerce, Bureau of the Census, U. S. Life and Actuarial Tables, 1939–1941, and is based upon the 1940 Census. The U. S. Life Tables 5 and 6 listed above are taken from the U. S. Life Tables, 1949–1951, published by the U. S. Department of Health, Education and Welfare. They are based upon the 1950 Census. Table 38 covers both white males and white females, combined. Table 5 covers white males only and Table 6 covers white females only. Mrs. Jones and her son are members of the white, or Caucasian race. Table 38, and Tables 5 and 6, are all used by actuaries.

"37. When submitting their 1954 income tax return, the taxpayers computed the present value of the plaintiff's rights in 15% of Policy Number 843,265 as of just before April 27, 1954 (the date Exhibit G was accepted and recorded at the home office of the Massachusetts Mutual Life Insurance Company) in the following way:

"(a) Step No. 1 was to take the present value (as of April 27, 1954) of the entire policy as carried on the books of the insurance company, to-wit, $374,863.90.

"(b) Step No. 2 was to determine what portion of that value was attributable to Mrs. Jones' interest, and what portion was attributable to her son's interest in the policy. Such valuations were computed on the basis of Table 38 of U. S. Life Tables and Actuarial Tables, 1939–1941, with interest at the rate of 3½% compounded annually. Such computations resulted in a valuation of $333,632.80 for Mrs. Jones' interest and $29,254.-21 for her son's interest, and these values were used solely to determine what percentage of the total value should be allocated to Mrs. Jones. Such percentage was

91.93848%      $\dfrac{(333,632.80)}{(362,887.01)}$.

"(c) Step No. 3 was to apply Mrs. Jones' percentage (91.93848) to the total value ($374,863.90) to determine the valuation of her interest. Such application resulted in a valuation of $344,644.17.

"(d) Step No. 4 was to multiply the above valuation of Mrs. Jones' interest in the policy ($344,644.17) by 15% to determine the valuation of the fractional portion assigned by her to the Foundation. Such step resulted in the valuation of $51,696.63 claimed on the 1954 tax return.

"The method of computing present value which is described above is the same as that prescribed in Sections 86.19(i) and 86.19(f)(5) of Treasury Regulations 108 (1939 Code)—now Section 25.2512–5 of Treasury Regulations (1954 Code)—for gift valuation purposes. The computations described in subparts (a), (b), (c), and (d) of this paragraph, above, were made at the request of the taxpayers by the actuarial department of the Massachusetts Mutual Life Insurance Company, for use by the plaintiffs in preparing their 1954 income tax return.

"LEGAL FEE PAYMENT

"38. In 1954, the plaintiffs paid the New York City law firm of Cravath, Swaine & Moore the sum of $9,535.41 for legal fees and expenses pursuant to such firm's statement of June 23, 1954. A true copy of such statement is attached as Exhibit A to the interrogatory answers filed by the plaintiffs on July 1, 1965.

"SUBMISSION OF CASE FOR DECISION

"39. The parties agree that this case can be, and hereby is, submitted for decision on the basis of a record consisting of:

"a. The complaint in this action, and the answer thereto.

"b. The defendant's June 1, 1965 interrogatories, and the plaintiff's July 1, 1965 answers thereto, including all exhibits.

"c. The deposition of George G. Tyler, Esquire, taken on September 3,

1965; and all exhibits thereto, and

"d. This stipulation.

"In addition, the joint deposition of Mr. and Mrs. George M. Jones, Jr., filed, admitted into evidence, and submitted to this Court in Case No. 8773–Civil, may be considered and treated by the Court as likewise being admitted into evidence in this case, insofar as the Court finds it to be relevant and material to the issues presented in this proceeding.

"40. The exact refund to the plaintiffs as a result of this action, if any, together with interest according to law, will be ascertained within 60 days after the Court files its opinion, on the basis of a recomputation by the Internal Revenue Service, agreed to by both parties. In the event the parties fail to agree upon the amount of the refund, the parties will submit the matter to the Court for decision, upon the basis of a supplemental stipulation of facts or the submission by the parties of such additional data as may be required." (End of Stipulation of Facts)

Because of the agreement of the parties as to legal fees and expenses, it is unnecessary to give attention to paragraph 38 in the above Stipulation of Facts, and that portion of paragraph 39 designated 39(b) and (c).

### QUESTIONS PRESENTED

Plaintiff details the questions presented as follows:

1. Whether Plaintiffs should be required to include, in their taxable incomes, amounts paid by insurance companies to a charitable foundation, pursuant to gifts which Plaintiffs had made to such foundation.

2. Whether Plaintiffs are entitled to a charitable contribution deduction for a gift which they made to a charitable foundation.

The Defendant defines the questions presented as follows:

1. Whether, in determining the taxpayers' net income for Federal income tax purposes, a deduction may be claimed on account of a charitable gift which could take effect only if the donor survived to a series of insurance contract payment dates up to and through the year 1963.

2. Whether the taxpayers may escape the payment of income tax, on the interest earned on two endowment insurance policies, by giving away their right to such income in advance of payment.

### STATUTES AND REGULATIONS INVOLVED

The Statutes and Regulations involved are as follows:

*Internal Revenue Code of 1939:*

"SEC. 23. DEDUCTIONS FROM GROSS INCOME.

"In computing net income there shall be allowed as deductions:

" * * *

"(o) *Charitable and other contributions.* In the case of an individual, contributions or gifts payment of which is made within the taxable year * *.

" * * *." (26 U.S.C. 1952 ed., Sec. 23.)

*Treasury Regulations 118 (1939 Code):*

"SEC. 39.23(o)–1. CONTRIBUTIONS OR GIFTS BY INDIVIDUALS

"(a) A deduction is allowable under section 23(o) only with respect to contributions or gifts which are actually paid during the taxable year, regardless of when pledged and regardless of the method of accounting employed by the taxpayer in keeping his books and records. * * *."

*Section 81.46(a) of Treasury Regulations 105:*

"§ 81.46 Conditional bequests. (a) If as of the date of decedent's death the transfer to charity is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that charity will not take is so

remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of decedent's death and such right or interest would be defeated by the performance of some act or the happening of some event which appeared to have been highly improbable at the time of decedent's death, the deduction is allowable."

*Internal Revenue Code of 1954:*

"SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

"(a) *General Rules for Annuities.* —Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

" * * *." (26 U.S.C. 1958 ed., Sec. 72.)

"SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

"(a) *Allowance of Deduction.—*

"(1) *General Rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

" * * *." (26 U.S.C., 1958 ed., Sec. 170.)

*Treasury Regulations on Income Tax (1954 Code):*

"SEC. 1.170–1. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS; ALLOWANCE OF DEDUCTION.

"(a) *General Rule.*—Any charitable contribution * * * actually paid during the taxable year is allowable as a deduction in computing taxable income, * * *.

" * * *

"(e) *Transfers subject to a condition or a power.*—If as of the date of a gift a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an interest passes to or is vested in charity on the date of the gift and the interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable on the date of the gift, the deduction is allowable. The deduction is not allowed in the case of a transfer in trust conveying a present interest in income if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest. * * *

" * * *." (26 C.F.R., Sec. 1.170–1.)

It is Plaintiff's position that she should not be taxed upon annuity income which she did not receive, which she did not have the right to receive, and which was received by a qualified charity by reason of the gifts by Plaintiff of her property rights in the insurance policies under consideration; that she is entitled to deduct the value of the gifts which she made to the charity in 1953 and 1954; and that the Government erred in refusing the deductions; that the gifts made in 1953 and 1954 were complete when made and that the values determined by independent actuaries are not in dispute; that the chances of the charity being divested of future benefits "were highly improbable" and in fact never occurred; that the charitable deductions are allowable as claimed. Plaintiff further contends that she should not be taxed upon income which she did not receive, directly or indirectly, merely because a charity, to which she donated income producing property, received such income in in-

stallments over a period of years subsequent to the gift; that she did not assign "income" as asserted by the Government but rather income producing property and hence the anticipatory assignment of income doctrine applied by the Government is inapplicable.

It is the position of the Defendant that the Commissioner of Internal Revenue disallowed both of the claimed charitable contribution deductions on the ground that, in each instance, the charitable contribution in question was subject to a condition, not so remote as to be negligible, which might prevent all or some part of the gift in question from ever reaching charity; that the pertinent condition was the possibility or probability that Plaintiff might die, survived by her son, George III, in which event no further payments would be made to the Miniger Foundation under Plaintiff's 1953 and 1954 assignments; that gifts which are not certain to reach charity may not be deducted as charitable contributions unless and until the uncertainty as to the charitable destination of the gifts is eliminated; further, that an anticipatory assignment of property representing income or the right to receive income results in the realization of that income and makes it taxable to the transferor.

The Government takes the position, therefore, that:—

First, an inter vivos gift to charity, subject to a condition which may prevent actual payment of the gift to charity, is not deductible under the provisions of Section 170 of the Internal Revenue Code of 1954 until such time as the condition in question is satisfied and the charitable destination of the gift becomes certain, and

Second, that when a donor assigns interest to a charity, the donor realizes taxable income at the time the interest is actually collected by the charity.

Under the facts in these cases, and after a study of Commissioner of Internal Revenue v. Estate of Sternberger, Chase National Bank of New York, Executor, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246; United States of America v. Dean, Executrix, 224 F.2d 26 (1st Cir.); City National Bank and Trust Co. of Columbus, Administrator of the Estate of Bess M. Kelly, Deceased, Plaintiff-Appellant v. United States of America, Defendant-Appellee, 6 Cir., 312 F.2d 118, and Morgan v. Commissioner, 42 T.C. 1080, Affirmed Per Curiam November 12, 1965 (4th Cir.), as to question number one as propounded by the Defendant we conclude that the Collector of Internal Revenue was correct in disallowing the deduction. At the time of the assignments there existed a probability, variously estimated by the parties to be either 6.8% or 11.1%, that the Miniger Foundation would receive nothing as the result of these assignments, or that, having taken something, it would receive nothing further, and that these chances of not so taking were not so remote as to be negligible.

As to question number two, involving the interest earned on the two endowment insurance policies, we conclude that the position of the Defendant-Government was correct. In arriving at this conclusion, we have given careful study and attention to the following cases: Helvering, Commissioner of Internal Revenue v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Austin v. Commissioner of Internal Revenue, 161 F.2d 666 (6th Cir.), Cert. Den. 332 U.S. 767, 68 S.Ct. 75, 92 L.Ed. 352; Fisher v. Commissioner of Internal Revenue, 209 F.2d 513 (6th Cir.); United States v. General Shoe Corp., 282 F.2d 9 (6th Cir.); First Kentucky Co. v. Gray, District Director of Internal Revenue, 309 F.2d 845 (6th Cir.); Friedman et al v. Commissioner of Internal Revenue, 346 F.2d 506 (6th Cir.).

Plaintiffs' complaints, insofar as they relate to issues which have not been settled or conceded, are dismissed.

Paragraph 40 of the Stipulation of Facts may be invoked to determine the exact refund, if any, due Plaintiff.

Judgment accordingly.